■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DERIK HAUSMAN, Appellant. [727 NYS2d 109] —Judgment, Supreme Court, New York County (Carol Berkman, J.), rendered November 24, 1997, convicting defendant, after a jury trial, of manslaughter in the first degree, and sentencing him to a term of 8⅓ to 25 years, reversed, on the law, and the indictment dismissed, with leave to re-present any appropriate charges to the Grand Jury.

The trial court erroneously denied defense counsel's challenge for cause concerning a prospective juror whose voir dire responses revealed "a state of mind * * * likely to preclude him from rendering an impartial verdict" (CPL 270.20 [1] [b]). Though the evidence against defendant was strong, the court's improper denial of defendant's challenge for cause is not subject to harmless error analysis (*see, People v Maddox*, 175 AD2d 183).

Defendant was charged with murder in the second degree. It was alleged that on June 10, 1994, defendant shot and killed Wade Boyles with an illegally obtained gun. The defense planned to argue that defendant shot Boyles in self-defense after Boyles, who was armed and intoxicated, attempted to rob him.

Therefore, during jury selection, defense counsel asked the prospective jurors whether they could fairly and impartially judge the self-defense claim and not be swayed by the fact that defendant's possession of the gun was unlawful. Thereupon, the following exchanges with Juror No. 4 took place:

"DEFENSE COUNSEL: What about illegally? You heard the judge say the law on justification. You are shaking your head. What if someone has the gun illegally and uses it in a way that the law in New York allows that person to use it, would you say like[,] you are shaking your head.

"PROSPECTIVE JUROR: Yes, I am troubled by someone carrying a gun illegally and what that implies about their intent. I am just using myself as the only person. I know if I am going to put a gun in my pocket and go out on the street I plan to use it. It is sort of a fantasy. Guns pervade us.

"DEFENSE COUNSEL: Do you agree a gun could have a defensive purpose as opposed to I am going to go out and use it?

"PROSPECTIVE JUROR: Yes.

"DEFENSE COUNSEL: Can a legal gun have a defense purpose?

"JUROR: I hate guns.

"DEFENSE COUNSEL: Can I stop and ask you this question. Hate is a strong word.

"JUROR: I believe the whole society has gone crazy.

"DEFENSE COUNSEL: Based upon those emotions of hatred, is it fair to say that would interfere with your ability to be fair?

"JUROR: Someone putting a gun in his pocket especially knowing that it is not legally warranted predisposes him or her to using it."

To summarize: In answer to defense counsel's questions, the prospective juror indicated his feeling that someone who puts a gun in his pocket "plan[s] to use it" and, when asked whether his "emotions of hatred" would interfere with his ability to be fair, responded that one putting a gun in his pocket, especially illegally, "predisposes him * * * to using it."

Clearly, Juror No. 4 was not able to promise that he could set aside his feelings about guns and follow the applicable legal principles, namely that defendant's illegal possession of the gun was irrelevant to the merits of his justification defense. The court then engaged in the following colloquy with the juror:

"COURT: Excuse me, nonetheless legal or illegal, there are certain circumstances under which you can under the law use deadly force. We are not dealing with morality whether you would do it, whether you would want anybody you care about to do it. We are talking about whether somebody is guilty of a crime. Notwithstanding your feelings about guns, can you follow that instruction?

"JUROR: I believe I could.

"COURT: And, would your hatred of guns prevent you from following my instruction that under certain circumstances you can use deadly physical force without being criminally accountable?

"JUROR: Not having heard the evidence, I could only say I would trust your instruction."

The court never asked the juror to state unequivocally that he could render an impartial verdict. The juror's responses even to the court's limited questions were evasive and qualified. When defense counsel later returned to this juror and asked whether he still had reservations, the juror simply replied, "I am still troubled by carrying an illegal gun and the implications it has in my mind to committing a crime."

Thereafter, the court denied defense counsel's challenge to this juror for cause, forcing him to exercise one of his peremp-

tory challenges. Defendant exhausted his remaining peremptory challenges prior to the completion of voir dire.

After this case was argued, this Court decided *People v Braxton* (277 AD2d 39, *lv denied* 95 NY2d 961). In that case, after a series of questions and answers indicated a bias on the part of a prospective juror, the trial court asked that juror whether she could follow the laws as charged; she answered "I will follow everything that's said, yes." The court denied the defendant's challenge, because of "her statements ultimately that she would follow all the legal principles." This Court reversed the conviction, observing that "[a]t no time did she offer an unequivocal assurance that she would be impartial" (at 40).

The Court of Appeals has often observed that it is almost always wise to err on the side of disqualification since "the worst the court will have done in most cases is to have replaced one impartial juror with another impartial juror" (*People v Culhane*, 33 NY2d 90, 108 n 3; *accord, People v Johnson*, 94 NY2d 600; *People v Torpey*, 63 NY2d 361).

Where a trial court erroneously denies a defense challenge of a prospective juror for cause and the defense exhausts its peremptory challenges, the conviction must be reversed (*see, People v Johnson*, 94 NY2d 600). When a question is raised about a juror's ability to be impartial, the juror must expressly state that his prior state of mind concerning the case or the parties will not affect his verdict, and that he will render an impartial verdict solely based on the evidence (*People v Blyden*, 55 NY2d 73, 77-78). If there is still any doubt that the juror is unbiased, the court should discharge the juror for cause (*id.*, at 78). It is not enough if the juror merely says that he will try to be fair (*People v Taylor*, 120 AD2d 325, 326), or that he hopes or thinks it probable that he could be fair (*People v Burdo*, 256 AD2d 737, 740).

Here, Juror No. 4 never unequivocally assured the court that he could follow the court's instruction to disregard the illegality of the gun possession and consider only the legal elements of a justification defense. To the contrary, he skirted defense counsel's questions and elaborated on his original position that defendant's unlawful possession of the weapon "predisposes him * * * to using it," thus, manifesting continued misgivings as to the viability of a justification defense.

The juror's lone promise, "I believe I could" follow the trial court's instructions, did not rehabilitate him when viewed in the context of his numerous expressions of bias (*see, People v Blyden, supra,* at 78 [isolated promise to be impartial may not be sufficient if juror's responses, taken as a whole, still indicate

a biased state of mind]). Juror No. 4 only made this statement in response to the court's general question whether, in light of his hatred of guns, he could *ever* accept the proposition that a fatal shooting could be legally justified. The court never directly asked him whether he could fairly evaluate the defendant's use of an *illegal* gun.

Thus, even if the juror was not biased against the whole idea of a justification defense in a case involving firearms, he never showed that he could be fair to a defendant who not only used a gun but possessed it illegally. His other statements all suggested that he could not. "[N]ot only did the challenged juror fail to follow his initial hesitation with an unambiguous promise to be fair, but also made a further statement indicating bias" (*People v Sharper*, 255 AD2d 139, 141, *affd* 94 NY2d 600).

The People's reliance on the failure of defendant to preserve this issue by not asking the court to administer an expurgatory oath is unavailing (*see, People v Johnson, supra*).

In *People v Thigpen* (277 AD2d 261), a prospective juror who indicated that he believed police officers were more credible than other witnesses was told by the court that one had to "treat a police officer like anyone else." The juror responded to the court's instruction: "I think so." The Appellate Division observed that the trial court "did not further explore the prospective juror's bias or attempt to otherwise elicit an expurgatory oath." (*Id.*)

The Court, in reversing, observed: "Furthermore, contrary to the People's contention, it is the obligation of the trial court, and not of the defense counsel, to 'require the prospective juror to "expressly state that his prior state of mind * * * will not influence his verdict, and * * * that he will render an impartial verdict based solely on the evidence" ' (*People v Torpey*, 63 NY2d 361, 367, quoting *People v Biondo*, 41 NY2d 483, 485, *cert denied* 434 US 928; *see also, People v Zachary* [260 AD2d 514]; *People v Cruz*, 244 AD2d 417). Here, the court failed to obtain such a statement from the prospective juror and denied the defendant's challenge for cause." (*Id.* at 261-262.)

The Court of Appeals, in *People v Arnold* (96 NY2d 358) has made the state of the law absolutely clear. "Indeed, nothing less than a personal, unequivocal assurance of impartiality can cure a juror's prior indication that she is predisposed against a particular defendant or particular type of case." (*Id.* at 364.)

Since defendant's conviction must be reversed for the aforestated reasons, we need not reach defendant's other contentions.

Since defendant was convicted of manslaughter in the first degree as a lesser included offense of murder in the second degree, dismissal with leave to re-present is required (*People v Mayo*, 48 NY2d 245). Concur—Rosenberger, J. P., Nardelli, Ellerin and Andrias, JJ.

Saxe, J., concurs in a Memorandum as follows: I am compelled to concur on the basis of *People v Arnold* (96 NY2d 358). Pursuant to that recent ruling, grounds for a cause challenge under CPL 270.20 (1) (b) may be established without the prospective juror ever stating that he has feelings or opinions that might interfere with the ability to be fair. In *Arnold*, a vague expression by the juror that she had "a problem with" domestic violence was determined to be enough to require that she be excused for cause in the absence of elicitation of an expurgatory oath. In the present case, the juror in question expressed views that, although probably held by most law-abiding citizens, cannot be reasonably distinguished from those of the juror in *Arnold*: "I am *troubled* by someone carrying a gun illegally and what that implies about their intent." (Emphasis added.) I therefore conclude that *People v Arnold* (*supra*), mandates the reversal of defendant's conviction.