150 P.3d 296

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Summer L. HAUSER, Defendant–Appellant.**

**No. 31695.**

Court of Appeals of Idaho.

Aug. 2, 2006.

Review Denied Jan. 12, 2007.

Molly J. Huskey, State Appellate Public Defender; Erik R. Lehtinen, Deputy Appellate Public Defender, Boise, for appellant. Erik R. Lehtinen argued.

Hon. Lawrence G. Wasden, Attorney General; Thomas R. Tharp, Deputy Attorney General, Boise, for respondent. Thomas R. Tharp argued.

LANSING, Judge.

Summer L. Hauser was convicted by a jury in the district court as an accessory to malicious injury to property. Hauser argues several trial errors on appeal.

## I.

### FACTUAL & PROCEDURAL BACKGROUND

In the wee hours of March 9, 2004, ten windows at Thornley's restaurant in Post Falls and several vehicles in that town were damaged by B.B.s shot from an air-gun. This case revolves around the conflicting stories told to the police by defendant-appellant Summer Hauser, and three other individuals who were with her around the time the windows were shot.

About a week after opening an investigation to determine who caused the damage to the windows, in response to a lead, Detective Richard White contacted one of Hauser's acquaintances, Julie Browning. At her first meeting with Detective White, Browning told him that she was with Hauser, Hauser's future-husband Chris Clapper, and Browning's then-boyfriend Jared Baisden, on the night in question. Browning also told Detective White that she saw a B.B. gun in her apartment, that she recalled Clapper and Baisden admitting that they shot out a van window near her apartment, and that the others had left her at home for awhile as they went "driving around shooting things." Browning denied any knowledge of the broken restaurant windows, however.

Two days later, Detective White interviewed Hauser at her home. Hauser admitted to socializing with Browning, Clapper, and Baisden at Browning's apartment on the night in question, but denied knowledge of the existence of a B.B. gun or any damaged windows.

Following his visit with Hauser, Detective White again interviewed Browning. This time, Browning told Detective White a somewhat different version of the night's events—this time she said that she was with Hauser, Baisden, and Clapper when Clapper shot B.B.s toward Thornley's restaurant from a car that Hauser was driving. Browning gave Detective White a written statement relating this version of the story, and Detective White also recovered several B.B.s and two carbon dioxide ($CO_2$) cartridges[1] from Browning's apartment. Over the next couple of weeks, Detective White interviewed Baisden and Clapper separately, both of whom denied any knowledge of the shootings.

Hauser was eventually charged with both felony and misdemeanor counts of malicious injury to property, Idaho Code §§ 18–204, –7001, for her alleged involvement in the shooting incident. At a preliminary hearing, however, the magistrate found that there was insufficient evidence to charge Hauser as a principal and that Hauser could only be tried as an accessory after the fact, I.C. § 18–205. An information charging Hauser with the latter offense was filed, and at trial Hauser was convicted as an accessory after the fact to malicious injury to property. The district court imposed a suspended sentence, placed Hauser on probation, and ordered Hauser to pay $1,565.28 in restitution for the broken windows.

Hauser appeals, arguing (1) that the State failed to present evidence from which a jury could find all of the required elements of the accessory after the fact charge, (2) that the district court erred in refusing to excuse a biased juror for cause, (3) that the district court erred in allowing the State to present evidence regarding the truthfulness of other individuals' statements and evidence regarding Baisden's drug purchase on the night in question, and (4) that the district court erred in ordering Hauser to pay restitution.

## II.

### ANALYSIS

**A. Sufficiency of Evidence**

We first address Hauser's argument that she is entitled to an acquittal because the evidence was insufficient to prove guilt. An appellate court will not set aside a judgment of conviction entered upon a jury verdict if there is substantial and competent evidence upon which a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, even if the evidence is conflicting. *State v. Porter*, 130 Idaho 772, 787, 948 P.2d 127, 142 (1997); *State v. Osborne*, 130 Idaho

---

1. $CO_2$ is used as a propellant in some air-guns.

365, 371, 941 P.2d 337, 343 (Ct.App.1997); *State v. Reyes,* 121 Idaho 570, 572, 826 P.2d 919, 921 (Ct.App.1992). In conducting this review, the appellate court will not substitute its view for that of the jury as to the credibility of witnesses, the weight to be given to the testimony, or the reasonable inferences to be drawn from the evidence. *State v. Knutson,* 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct. App.1991). Rather, the facts and inferences to be drawn from those facts are construed in favor of upholding the jury's verdict. *State v. Hughes,* 130 Idaho 698, 701, 946 P.2d 1338, 1341 (Ct.App.1997). As for the application and construction of statutes, this Court exercises free review. *State v. Reyes,* 139 Idaho 502, 505, 80 P.3d 1103, 1106 (Ct.App. 2003); *State v. Schumacher,* 131 Idaho 484, 485, 959 P.2d 465, 466 (Ct.App.1998).

The crime of accessory is defined in I.C. § 18–205 as follows:

All persons are accessories who, having knowledge that a felony has been committed:

(1) Willfully withhold or conceal it from a peace officer, judge, magistrate, grand jury or trial jury; or

(2) Harbor and protect a person who committed such felony or who has been charged with or convicted thereof.

Hauser was charged only under subsection (1) of this statute. Hauser concedes that the State presented sufficient evidence to prove the elements of the underlying offense of felony malicious injury to property, I.C. § 18–7001, but asserts that the State did not present evidence by which a jury could find that she was an accessory to that crime— namely, that she had actual knowledge that the felony had been committed, or that she willfully withheld or concealed such knowledge from Detective White.

■ Initially, we must address Hauser's contention that the State was required to prove she had "actual" knowledge that a felony had been committed. That is, Hauser asserts that the State did not prove she had actual knowledge of a felony because there was no evidence that she actually saw or heard the windows at Thornley's restaurant get broken. In *State v. Teasley,* 138 Idaho 113, 116, 58 P.3d 97, 100 (Ct.App.2002), this Court held that section 18–205 does not require actual knowledge when prosecuting under subsection (2) of the statute, which pertains to harboring and protecting a person who has committed or been charged with a felony. We reasoned that requiring actual knowledge would lead to absurd results because, even if a fugitive were charged with or convicted of a felony, the person harboring the fugitive could escape liability as an accessory by asserting a belief that the fugitive was innocent. *Id.* A similar rationale commands a similar result in the context of subsection (1). To paraphrase *Teasley,* the purpose of the accessory statute, to aid law enforcement, would be eviscerated by a requirement that the State prove actual knowledge. A person could escape criminal responsibility by simply asserting ignorance or disbelief that a felony had actually been committed. A better interpretation, and the one we adopt here, is that the knowledge requirement of I.C. § 18–205, in the context of subsection (1) of that statute, is met if the person charged as an accessory had such information as would lead a reasonable person to conclude that a felony had been committed.

■ Here, a jury could reasonably infer from the evidence that Hauser had information that would lead a reasonable person to conclude that Clapper had committed a felony. The State introduced evidence of this mainly through the testimony of Julie Browning. Browning said that, on the night in question, she came home from work to find Hauser, Clapper, and Baisden at her apartment. She saw a silver air-gun in her apartment, and Clapper said he owned it. Hauser witnessed this conversation between Browning and Clapper. Hauser drove Browning, Clapper, and Baisden to a KFC restaurant, and upon leaving, with Hauser still driving, Clapper shot the B.B. gun out the car window multiple times in the direction of Thornley's restaurant. The B.B. gun made a loud noise when shot. Browning further testified that there was no loud music or any other noise that would have prevented Hauser from hearing Clapper claim ownership of the B.B. gun and shoot the B.B. gun while Hauser was driving. Finally, Brown-

ing testified that Clapper shot a parked car's window as the foursome drove past it, and that Browning and Hauser later witnessed Clapper and Baisden talking and laughing about shooting a van near Browning's apartment. Thereafter, Hauser was informed by Detective White that restaurant and car windows had been damaged by B.B. gunfire. This is ample evidence to prove that when Hauser responded to Detective White's questions, she had information that would lead a reasonable person to conclude that the felony of malicious injury to property had been committed.

The State also provided evidence to show that Hauser, having knowledge that a felony had been committed, willfully withheld or concealed it from the detective. Foremost, the jury heard an audio recording of Detective White's interview of Hauser where she denied any knowledge of a B.B. gun or the shooting of windows. In fact, she specifically told Detective White that neither she nor any of the other three individuals she was with on the night in question had anything to do with any of the shootings.

Accordingly, we conclude that the State presented substantial and competent evidence by which a reasonable jury could find that Hauser was guilty as an accessory after the fact.

**B. Biased Juror**

Hauser next argues that she is entitled to a new trial because a biased juror was allowed to participate in her trial. Hauser contends that Juror 31 should have been excused for cause because, during voir dire, he acknowledged that he was inclined to always believe law enforcement officers and was biased against criminal defendants. The voir dire questioning between defense counsel and Juror 31 went as follows:

[Q]: Are any of you friends or related to law enforcement? Juror number?

[A]: Thirty-one.

[Q]: What's your relationship there?

[A]: My cousin.

[Q]: And does your cousin live here?

[A]: Yeah.

[Q]: Where do they—

[A]: Kootenai County police officer.

[Q]: And would you tend to give more weight to a Kootenai County sheriff's office—

[A]: Probably would.

[Q]: You would?

[A]: Yeah.

[Q]: Based on your relationship?

[A]: Just because I—I have so much contact with him and we're constantly playing basketball together and stuff.

[Q]: How often do you do that?

[A]: We play basketball three times a week. We're, uh—I go out there to watch his kid quite a bit.

[Q]: Would you characterize that as a pretty close relationship?

[A]: Oh, yeah.

. . . .

[Q]: Did you grow up together in this area?

[A]: Yeah.

[Q]: And you don't think you could put that aside during this trial?

[A]: I would tend to believe him.

[Q]: A Kootenai County sheriff's deputy over a defendant?

[A]: Probably.

[Q]: And you would have that opinion even before you heard any testimony?

[A]: Just from all the things I hear them guys talk about.

[Q]: Do they talk about what they do a lot?

[A]: Talk about their jobs quite a bit.

[Q]: Do they? Do they mention what they think of some of the people that they arrest and charge?

[A]: (Nods head)

[Q]: Yes?

[A]: Yes, sir.

[Q]: And you think that that would pretty much bias you against the defendant?

[A]: Uh, probably.

[Q]: All right. And you don't think you could put that aside during this trial?

[A]: I don't think so.

At this point, defense counsel moved to excuse Juror 31 for cause. The prosecutor then questioned Juror 31 as follows:

[Q]: Would you try to be fair if you were picked as a juror?

[A]: Yes. I would try, yes.

[Q]: Would you agree with the idea that just because a police officer says something doesn't necessarily mean its true?

[A]: I don't know. I tend to believe him.

[Q]: But you'd try to be fair if you were picked on the jury?

[A]: Yeah.

The prosecutor then stated, "I think ... if the juror would try, Your Honor, that's adequate to keep him on and not excuse him for cause." The district court, in apparent agreement, denied defense counsel's request to excuse Juror 31, who ultimately sat on the jury and took part in reaching the verdict against Hauser.

■ The determination whether a juror can render a fair and impartial verdict is directed to the sound discretion of the trial court and will not be reversed absent a showing of abuse of discretion. *State v. Yager*, 139 Idaho 680, 688, 85 P.3d 656, 664 (2004); *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989). "When an exercise of discretion is reviewed on appeal, the appellate court conducts a multi-tiered inquiry. The sequence of the inquiry is (1) whether the lower court rightly perceived the issue as one of discretion; (2) whether the court acted within the outer boundaries of such discretion and consistently with any legal standards applicable to specific choices; and (3) whether the court reached its decision by an exercise of reason." *Id.*

A criminal defendant has a constitutional right to trial by an impartial jury. U.S. Const. amends. V, VI, XIV; Idaho Const. art. 1, §§ 7, 13. In addition, the Idaho Code provides criminal defendants with the right to a jury trial, as well as the ability to strike potential jurors for cause if actual or implied bias exists. I.C. §§ 19–1902, –2019, –2020. *See also* I.C.R. 24(b) (giving procedure for voir dire examination and challenges for cause). Here, we only address whether Juror 31 had *actual* bias since the facts do not fit within any of the exclusive categories of *implied* bias enumerated in I.C. § 19–2020.

■ Actual bias is defined as "the existence of a state of mind on the part of the juror in reference to the case, or to either of the parties, which, in the exercise of a sound discretion on the part of the trier, leads to the inference that he will not act with entire impartiality." I.C. § 19–2019(2). But disqualification is not necessarily required by every venire person who, at some point during voir dire, expresses bias toward a party. "Although not always dispositive, the court is entitled to rely on assurances from venire persons concerning partiality or bias." *State v. Hairston*, 133 Idaho 496, 506, 988 P.2d 1170, 1180 (1999). It has often been stated:

> The trial court does not need to find jurors that are entirely ignorant of the facts and issues involved in the case. To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.

*Hairston*, 133 Idaho at 506, 988 P.2d at 1180 (quoting *Murphy v. Florida*, 421 U.S. 794, 800, 95 S.Ct. 2031, 2036, 44 L.Ed.2d 589, 594 (1975)); *State v. Needs*, 99 Idaho 883, 891, 591 P.2d 130, 138 (1979). *See also State v. Hartwig*, 112 Idaho 370, 372, 732 P.2d 339, 341 (Ct.App.1987), *overruled on other grounds, State v. Howell*, 122 Idaho 209, 211–12, 832 P.2d 1144, 1146–47 (Ct.App.1992); *State v. Hoffman*, 109 Idaho 127, 130, 705 P.2d 1082, 1085 (Ct.App.1985) (citing *Murphy* for the proposition that, in the context of implied bias, "if the trial judge is soundly persuaded that the juror will set aside his initial impression, and render a verdict based on the evidence presented at trial, the juror can be allowed to remain").

Whether a trial court must excuse a juror who, after admitting bias, makes an assurance that he or she will "try" to be fair, is a question of first impression in this state. Although there are many cases from other jurisdictions involving similar circumstances,

they present no consistent line of authority. At least one jurisdiction follows a rule that "[e]xcusal is not required when a potential juror states that he or she will 'try' to decide the case based upon the court's instructions and the evidence." *Clark v. State*, 265 Ga. App. 112, 593 S.E.2d 28, 31 (2003) (quotation marks and internal citations omitted). Other courts require an unequivocal assurance of the ability to be impartial and hold that it is not sufficient if the juror merely says that he will try not to let his pre-existing bias affect his verdict. *People v. Hausman*, 285 A.D.2d 352, 727 N.Y.S.2d 109, 112 (N.Y.App.Div. 2001). *See also Peters v. State*, 874 So.2d 677, 680 (Fla.Dist.Ct.App.2004); *State v. Logan*, 535 N.W.2d 320, 324 (Minn.1995); *People v. Greene*, 290 A.D.2d 349, 737 N.Y.S.2d 32, 32–33 (N.Y.App.Div.2002). Still other jurisdictions have declined to draw a bright line and, instead, decide each case on an *ad hoc* basis. *Compare, e.g., State v. Iuli*, 101 Hawai'i 196, 65 P.3d 143, 151–52 (2003) (juror who admitted bias because of his relationship to law enforcement did not dispel bias when he said it was a "tough call" as to whether he could be fair; his statement, "I'll try to be honest," was "ambiguous at best"), *with State v. Graham*, 70 Haw. 627, 780 P.2d 1103, 1107–08 (1989) (trial court did not err in retaining juror who stated that she would try to be fair to the defendant, and her responses during colloquy with the court dispelled the suggestion that she could not render a verdict based on the evidence).

■ The greatest certainty that an accused's constitutional right to an impartial jury will be safeguarded is achieved by excusing for cause jurors who, after admitting bias, do no more than make equivocal assurances of an effort to be impartial. "When a juror is unable to state that she *will* serve fairly and impartially despite being asked repeatedly for such assurances, we can have no confidence that the juror will 'lay aside' her biases or her prejudicial personal experiences and render a fair and impartial verdict." *Thompson v. Altheimer & Gray*, 248 F.3d 621, 627 (7th Cir.2001) (quoting *United*

*States v. Gonzalez*, 214 F.3d 1109, 1114 (9th Cir.2000)) (emphasis added).[2] If the trial court resolves any doubt on the side of disqualification, "[t]he worst the court will have done in most cases is to have replaced one impartial juror with another impartial juror," *People v. Johnson*, 94 N.Y.2d 600, 709 N.Y.S.2d 134, 730 N.E.2d 932, 941 (2000), whereas resolving doubt in favor of retaining the juror can result in the deprivation of a fair trial. We agree with those courts that have concluded that any justified doubt that a venireman can "stand indifferent in the cause" ought to be resolved in favor of the accused. *Justus v. Commonwealth*, 220 Va. 971, 266 S.E.2d 87, 90 (1980). *See also Gonzalez*, 214 F.3d at 1114. This resolution gives full effect to the language in I.C. § 19–2019(2), which calls for disqualification of a juror who exhibits a state of mind that "leads to the inference that he will not act with entire impartiality." In our view, when a juror admits bias, and gives no unequivocal assurance of the ability to be impartial despite several efforts by the court or counsel to elicit such an assurance, an inference that he will not act with *entire* impartiality becomes inescapable.

■ At Hauser's trial, Juror 31 initially said he would "give more weight" to the word of a Kootenai County sheriff's officer, would tend to believe the officer at trial over the testimony of a defendant, and held that opinion "even before [he] heard any testimony." This response is particularly disquieting in this trial because the State's case turned largely upon the testimony of a detective who had interviewed Hauser, and this detective was the "victim" of Hauser's alleged willful concealment of information. When the juror was asked if he could put his bias aside during the trial, he responded "I don't think so." He agreed to try to be fair, but when asked to endorse the idea that everything a police officer says is not necessarily true, Juror 31 declined, reiterating that "I tend to believe him." The voir dire produced no assurance that the juror would

---

2. *Compare United States v. Evans*, 272 F.3d 1069, 1078–80 (8th Cir.2001), wherein the court distinguished *Thompson* and *Gonzalez* on the ground that, although the juror made only equivocal

assurances of impartiality, there was no evidence of bias. Such is not the case here, where Juror 31 frankly admitted bias in favor of members of law enforcement.

lay aside his prejudices and render an impartial verdict.

Perhaps the implication of intractable bias could have been dispelled if the trial court had participated by directly asking the juror whether he would promise or commit to set aside his preconceived notions and base his verdict solely on the trial evidence. We can only speculate about the answer that might have been given to this focused query. As the record stands, however, Juror 31 was never asked to make, and did not make, that commitment. Questions to the juror were posed only in terms of what he could "try" to do. On this record, we cannot be confident Juror 31 acted as a fair and impartial factfinder. We therefore hold that the district court erred in failing to excuse Juror 31 for cause. Hauser was thus deprived of her constitutional right to an impartial jury and is entitled to a new trial.

## C. Evidentiary Issues

In light of our decision that Hauser is entitled to a new trial, we address the evidentiary issues raised on appeal only to provide guidance in the event that a new trial is forthcoming.

Hauser contends on appeal that the district court erred in admitting Detective White's testimony that in his opinion, statements made to him by Baisden and Clapper were untruthful.[3] Hauser also argues the district court incorrectly allowed testimony by Browning concerning an alleged drug purchase by Baisden on the night in question. We address each evidentiary issue in turn.

■ The district court has broad discretion in the admission and exclusion of evidence, and this Court reviews the decision to admit such evidence for an abuse of discretion. *State v. Perry*, 139 Idaho 520, 521, 81 P.3d 1230, 1231 (2003); *State v. Howard*, 135 Idaho 727, 731–32, 24 P.3d 44, 48–49 (2001).

3. Detective White also testified that he did not believe Hauser was truthful with him, but Hauser did not object to this testimony, and therefore any error was not preserved for appeal.

4. Idaho Rule of Evidence 701 states:
   If the witness is not testifying as an expert, the testimony of the witness in the form of opinions or inferences is limited to those opinions

## 1. Truthfulness of Baisden and Clapper

At trial, while testifying about his investigative interviews with Hauser, Clapper, and Baisden, Detective White stated that he did not believe Clapper was "truthful" with him. As to Baisden, Detective White testified that "he acted like he wanted to say something, but then he didn't. He acted like he wanted to come forward." Hauser's objections in both instances that the testimony was speculation were overruled. Hauser argues on appeal that these rulings were erroneous.

■ The State concedes that the district court erred in allowing Detective White to give his opinion of Clapper's truthfulness. We therefore only address Detective White's testimony about Baisden. The State argues that no error occurred because Detective White was only describing his observation of Baisden's demeanor and drawing permissible inferences or opinions from those observations, as allowed by Idaho Rule of Evidence 701.[4] The relevant portion of Detective White's testimony proceeded as follows:

Q: Can you describe that conversation [with Baisden] for me, you know, the way it started and go from there?

A: Well, when he first got in there I advised him of his rights. I told him I was tape recording the whole thing and then started to ask him questions regarding the incident. Uh, he—he acted like he wanted to say something, but then he didn't. He acted like he wanted to come forward.

[Defense]: Judge, I'm gonna object to this. This is clearly speculation. There's no foundation for it.

[Prosecutor]: He's describing his demeanor, Judge. He can—

[The Court]: Overruled.

[Prosecutor]: Continue that, please.

or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the testimony of the witness or the determination of a fact in issue, and (c) not based on scientific, technical or other specialized knowledge within the scope of Rule 702.

[A]: He—like I say, he acted like he wanted to tell me more, but then he didn't. Uh, like I explained to this gentleman a minute ago, he wanted me to go off tape to, uh, tell me something, and at first I didn't want to, and then I did, and when I did, his only comment was, "I'm not a snitch," and then I turned the tape—I asked him, "Is that all you got to say to me?" "Yeah, pretty much."

I turned the tape back on and continued to question him regarding the incident and, uh—and then when I asked him about the $CO_2$ cylinders, you know, if he didn't see any $CO_2$ or B.B. gun, then I wouldn't be able to find your prints on the $CO_2$ cylinders, and he just kind of sat back and really had no answer for that, and he—like I say, he just—he seemed to me to be wanting to say something but didn't.

We agree with Hauser that Detective White's remarks, prior to her objection, regarding Baisden's desire "to say something" or "to come forward" were not admissible lay opinion testimony under Rule 701 because no "perception of the witness" giving some basis for the opinion had yet been presented. Detective White had not yet described anything relating to Baisden's behavior or demeanor, but instead expressed conclusory opinions. Following the objection, however, Detective White testified to specific observations that led to his inference or opinion that Baisden wanted to say something more. This latter testimony was permissible under Rule 701. Contrary to Hauser's argument, this testimony did not amount to an opinion that Baisden was being untruthful during his interview.

### 2. Testimony regarding Baisden's drug purchase

Hauser argues that the district court erred in allowing Browning to testify that the purpose of the foursome's trip to the KFC on the night in question was so Baisden could purchase some marijuana. Hauser contends

that this testimony was irrelevant and proffered solely to show Hauser's bad character and her propensity to act in conformity with that character.[5]

Generally, "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion." I.R.E. 404(a). Additionally, evidence of other criminal acts or offenses is inadmissible to prove the character of a person in order to show that he committed the crime for which he is on trial. I.R.E. 404(b); *State v. Moore*, 120 Idaho 743, 745, 819 P.2d 1143, 1145 (1991). At the same time, however, such evidence may be "admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." I.R.E. 404(b); *Moore*, 120 Idaho at 745, 819 P.2d at 1145. This Court's review of whether evidence of other so-called "bad acts" was properly admitted under Rule 404(b) is two-pronged:

First, the evidence must be relevant to a material and disputed issue concerning the crime charged. *State v. Moore*, 120 Idaho 743, 745, 819 P.2d 1143, 1145 (1991). Whether evidence is relevant is an issue of law. *State v. Raudebaugh*, 124 Idaho 758, 864 P.2d 596 (1993). Therefore, when considering a district court's admission of evidence of prior misconduct, we exercise free review of the trial judge's relevancy determination. The second step in the analysis is the determination that the probative value of the evidence is outweighed by unfair prejudice. When reviewing this step we use an abuse of discretion standard. *State v. Atkinson*, 124 Idaho 816, 819, 864 P.2d 654, 657 (Ct.App.1993), *cert. denied*, 511 U.S. 1076, 114 S.Ct. 1659, 128 L.Ed.2d 376 (1994).

*State v. Pilik*, 129 Idaho 50, 53, 921 P.2d 750, 753 (Ct.App.1996). Evidence is relevant if it

---

**5.** Hauser also argues that the drug purchase testimony was inadmissible because the State did not comply with Rule 404(b)'s requirement that the State provide pretrial notice to the defense that such evidence would be offered, or show good cause during trial why such notice was not given. The trial transcript indeed suggests that the State did not notify the defense of this evidence prior to trial, and it clearly shows that the district court did not find that the State had good cause for failing to provide such notification. We need not decide whether Hauser is correct, however, because the case is being remanded for a new trial on other grounds.

has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." I.R.E. 401.

Here, Hauser argues that the testimony regarding the drug purchase was the type of evidence prohibited by Rule 404(b) since it showed that Hauser participated in the purchase of drugs by driving Baisden to the KFC. We disagree, for this evidence was relevant to explain why Browning changed her story to the police. This case revolved around Browning's credibility as compared to Hauser's. Browning had told two different accounts of the night's events to Detective White, and her credibility was thus seriously compromised. Browning's testimony regarding the drug buy was relevant to explain why she initially gave an untruthful account to the police. Browning explained to the jury that she made her initial false statement because she "didn't want to get in trouble and [she] was worried about the going to get the marijuana." The testimony was thus probative for a purpose other than to show Hauser's poor character and was therefore not prohibited by Rule 404(b).

Nor did the trial court err in implicitly finding that the probative value was not outweighed by unfair prejudice. Because Browning's credibility was essential to the jury's determination, a rational explanation as to why Browning would alter her story to the police was highly probative. Any prejudice to Hauser was slight since Browning did not implicate her in the drug purchase (other than acting as the driver) or in any drug use. Therefore we find no error in the admission of this testimony.[6]

### III.

### CONCLUSION

Because we conclude that the district court erred in failing to excuse an admittedly bi-

ased juror who did not give an unequivocal assurance of impartiality, Hauser is entitled to a new trial. Hauser's judgment of conviction, as well as the district court's restitution order, are therefore vacated, and the case is remanded for further proceedings.

Chief Judge PERRY concurs.

Judge Pro Tem SCHWARTZMAN, specially concurring.

I concur in the opinion of this Court, but write separately to address and amplify two of the issues covered in the main opinion.

### A. Sufficiency of Evidence: I.C. § 18–205(1)

Whether a deliberate falsehood to a peace officer may violate the accessory statute is a new question in Idaho.[7] In *People v. Duty,* 269 Cal.App.2d 97, 74 Cal.Rptr. 606 (1969), the court therein found the key to answering the question by distinguishing between "affirmative" falsehoods and "passive" nondisclosure. The decision noted that, on the one hand, some "American decision[s]" do not criminalize the "passive failure to reveal a known felony ... refusal to give information to the authorities, or ... denial of knowledge motivated by self-interest." *Id.* at 609. By contrast, an "affirmative falsehood to the public investigator, when made with the intent to shield the perpetrator of the crime, may form the aid or concealment, denounced by the statute." *Id.* The "gist" of the California accessory statute, stated the court, was that "the accused 'harbors, conceals or aids' the principal with the requisite knowledge an[d] intent." *Id.* Following from this, it determined:

> Any kind of overt or affirmative assistance to a known felon may fall within these terms. A person may be charged under [the accessory statute] when he aids the principal in concealing the latter's crime.

---

6. On appeal, Hauser also has argued that the district court erred in ordering her to pay restitution for the broken windows when she was convicted only of being an accessory after the fact. Whatever merit there may be in Hauser's argument, we will not address it because the judgment of conviction must be vacated due to trial

error, and the restitution issue is thus rendered moot.

7. By comparison, I.C. § 18–705, Idaho's resisting and obstructing criminal statute, makes knowingly giving a false report to any police officer a misdemeanor offense.

"The test of an accessory after the fact is that, he renders his principal some personal help to elude punishment,—the kind of help being unimportant." (1 Bishop's Criminal Law 500, § 695.)

*Id.* The court concluded that Duty's act of providing Jenner, the perpetrator, a false alibi satisfied the "conceals or aids" categories of the accessory statute because his act was more than mere "passive nondisclosure":

> The jury could reasonably find that defendant had actively concealed or aided Mrs. Jenner by supplying an affirmative and deliberate falsehood to the public authorities, a false alibi which removed the principal from the scene of her crime and placed her on the highway enroute to San Francisco at the time when the fire must have been set.

*Id.*

Similarly, in the case at bar, Hauser actively concealed her knowledge of the felony by supplying an affirmative and deliberate falsehood to Detective White—a false alibi which removed Clapper from the scene of the crime. A notable difference, however, is in the wording of Idaho's accessory statute as compared to California's. Section 18–205(1) criminalizes "[w]ilfully withhold[ing] or conceal[ing] *it* from a peace officer," whatever "it" may be; the statute does not criminalize "conceal[ing] or aid[ing] a principal" as does California's statute. Nevertheless, *Duty's* distinction between passive nondisclosure and affirmative falsehood is perhaps useful in identifying the type of conduct that qualifies as willful concealment under I.C. § 18–205(1). The gist of Hauser's offense, however, lies in the providing of false information to the police investigator for the purpose of hindering the true felon's apprehension and prosecution. *See generally,* 2 WAYNE R. LA-FAVE, SUBSTANTIVE CRIMINAL LAW, § 13.6, 400–410 (2d ed.2003).

Of abiding concern to this writer, though not an issue raised on appeal, is whether Hauser could still be liable as an accessory had she simply refused to provide any information to Detective White. Although the *Duty* decision implied that under California's statute passive nondisclosure to the police would not be criminal, one might argue that I.C. § 18–205(1)'s use of the word "withhold" means that even passive conduct can lead to culpability as an accessory. In other words, Hauser could arguably be an accessory if she had merely declined to speak with the detective, i.e., if she had simply "withheld her knowledge."

However, the Fifth Amendment implications where a person withholds information for fear of self-incrimination are abundantly manifest. It must be remembered that Hauser was originally charged as a principal to the actual crimes of malicious injury to property. Even the state, at oral argument, recognized her right to remain silent. Furthermore, the mere failure to report a crime, known as the offense of misprision of felony, has never gained currency in this country. *See* 2 LAFAVE, *supra,* § 13.6 at 409–410. Finally, the withholding of knowledge from a "judge, magistrate, grand jury or trial jury"—also part and parcel of I.C. § 18–205(1)'s definition of accessory—would all arise in a venue of record replete with due process protections.

Also, consider the following not-so-hypothetical hypothetical. An Idaho college lacrosse team hires an exotic dancer to attend an after-game party. The dancer alleges that three of the forty men present at the house assaulted her in the bathroom. Are the remaining thirty-seven liable as accessories if they refuse to talk to police until or after consulting with an attorney, their coach, athletic director, parents, etc? These Fifth Amendment implications need not be further addressed here, however, because Hauser did not merely refuse to talk—she lied with intent to shield the perpetrator from prosecution.

## B. Biased Juror

The "actual bias" evaluation and determination of Juror 31 presents a close question for this Court. While deference should be given to the trial judge, there are limits. For me, the lynchpin of this case swings on the testimony of the detective, the actual "victim" of the crime in question. In addition, this witness, whom Juror 31 would al-

ways tend to believe anyway because of his status as a police officer, blurts out his personal opinion that the defendant was not being truthful with him. *See* footnote 3 of main opinion. I have little faith in Juror 31's assertion that he would "try" and be fair in these circumstances. Excusing Juror 31 for cause would be a further safeguard against such unpredictable evidentiary miscues.