IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 39234

STATE OF IDAHO,                          )       2013 Unpublished Opinion No. 783
                                         )
        Plaintiff-Respondent,            )       Filed: December 10, 2013
                                         )
v.                                       )       Stephen W. Kenyon, Clerk
                                         )
CURTIS EDWARD JACKSON,                   )       THIS IS AN UNPUBLISHED
                                         )       OPINION AND SHALL NOT
        Defendant-Appellant.             )       BE CITED AS AUTHORITY
                                         )
_____ )

Appeal from the District Court of the First Judicial District, State of Idaho,
Bonner County.  Hon. Steven C. Verby, District Judge.

Judgment of conviction for lewd conduct with a minor child; orders denying
motion for appointment of counsel and denying I.C.R. 35 motion, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Brian R. Dickson, Deputy
Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Lori A. Fleming, Deputy Attorney
General, Boise, for respondent.
        _____

GRATTON, Judge

        Curtis Edward Jackson appeals from the district court's judgment of conviction entered
upon a jury verdict finding him guilty of three counts of lewd conduct with a minor child under
sixteen, Idaho Code § 18-1508, and from the district court's order denying his motion for
appointment of counsel for purposes of his Idaho Criminal Rule 35 motion.  We affirm.

I.

FACTUAL AND PROCEDURAL BACKGROUND

        Jackson was charged with three counts of lewd conduct based on allegations that he
committed sexual offenses against a nine-year-old girl on multiple occasions in 2009.  Jackson's
first trial ended in a mistrial.  In the second trial, the jury found Jackson guilty of all charges.
The district court imposed three concurrent unified terms of life with fifteen years determinate.
Jackson filed a Rule 35 motion and a motion for appointment of counsel.  The district court
denied both motions.  Jackson timely appeals.

1

## II.

## ANALYSIS

Jackson claims that: (1) the district court erred by failing to excuse a juror for cause; and (2) the district court erred by denying his motion for appointment of counsel to assist him in pursuing his Rule 35 motion.

### A.    Biased Juror

"The determination whether a juror can render a fair and impartial verdict is directed to the sound discretion of the trial court and will not be reversed absent a showing of abuse of discretion." *State v. Hauser*, 143 Idaho 603, 609, 150 P.3d 296, 302 (Ct. App. 2006). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the lower court reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

A criminal defendant has a constitutional right to trial by an impartial jury. U.S. CONST. amends. V, VI, XIV; IDAHO CONST. art. I, §§ 7, 13. The Idaho Code provides criminal defendants with the right to a jury trial, as well as the ability to strike potential jurors for cause if actual or implied bias exists. I.C. §§ 19-1902, 19-2019. *See also* I.C.R. 24(b) (addressing the procedure for voir dire examination and challenges for cause). Actual bias is defined as "the existence of a state of mind on the part of the juror in reference to the case, or to either of the parties, which, in the exercise of a sound discretion on the part of the trier, leads to the inference that he will not act with entire impartiality." I.C. § 19-2019(2). However, a trial court does not abuse its discretion by refusing to excuse for cause a juror whose answers during voir dire initially give rise to a challenge for cause but who later assures the court that he or she would be able to remain fair and impartial. *Nightengale v. Timmel*, 151 Idaho 347, 353, 256 P.3d 755, 761 (2011).

In the instant case, Jackson contends that Juror 34 should have been removed for cause because she expressed bias towards him. Juror 34 initially stated that if the case was "purely" Jackson's word against the nine-year-old girl's word, she would believe the testimony of the nine-year-old girl. Thereafter, defense counsel asked the district court to remove Juror 34 for

2

cause.  The State accepted the district court's invitation for further inquiry and, after discussing the reasonable doubt standard, the following exchange occurred:

| | |
|---|---|
| [STATE]: | Can you perform your duty here as a juror? |
| [JUROR 34]: | I believe so. |
| [STATE]: | If I don't do my job and put forth the evidence to convince you when it's time to go back into the jury room, can you vote not guilty? |
| [JUROR 34]: | Yes. |

The State objected to Jackson's motion to excuse Juror 34 for cause, whereupon defense counsel further inquired of Juror 34:

| | |
|---|---|
| [DEFENSE COUNSEL]: | Okay.  And it's six, six and let's say I don't put on any evidence at all and it seems reasonable, would you find my client guilty based on it seems reasonable?  How about it's plausible? |
| [JUROR 34]: | It would have to be more than plausible. |
| [DEFENSE COUNSEL]: | How about believable? |
| [JUROR 34]: | I don't know.  I guess that's all semantics.  It's supposed to be beyond a reasonable doubt. |
| [DEFENSE COUNSEL]: | Supposed to be. |
| [JUROR 34]: | Yeah. |
| [DEFENSE COUNSEL]: | Will you hold yourself to that standard? |
| [JUROR 34]: | Yeah. I think so.  Yeah. |
| [DEFENSE COUNSEL]: | Okay.  Well, let me ask one last question.  If you were afraid he did this but you don't think they proved it, would you find him guilty anyway? |
| [JUROR 34]: | I guess I would have a hard time if I felt like the prosecution, you know, didn't. |
| [DEFENSE COUNSEL]: | And then maybe your job would be to make up the difference. |
| [JUROR 34]: | Put forth enough. |
| [DEFENSE COUNSEL]: | So basically the answer would be yes. |
| [JUROR 34]: | Yeah. |
| [DEFENSE COUNSEL]: | If they gave you enough to hang your hat on, even if they didn't really prove beyond a reasonable doubt, just to make sure, just to make sure, that he doesn't get away with it. |
| [JUROR 34]: | Yeah.  I--you know just because of the nature of this case. |

The State then explained the oath the juror would be required to take and discussed the meaning of "beyond a reasonable doubt," after which the discussion concluded as follows:

| | |
|---|---|
| [STATE]: | Can you follow the rules in this setting as well? |

3

| | |
|---|---|
| [JUROR 34]: | Yes. But it just comes back to the reasonable part, I guess. |
| COURT: | I'm sorry. It goes back to the what? |
| [JUROR 34]: | To the reasonable--the reasonable doubt. |
| [STATE]: | Okay. There are definitions to all these things but I certainly understand what you mean that even when there's a definition it's hard to know what that really means. But you do understand that I have the burden. I have to show that he's guilty. |
| [JUROR 34]: | Right. |
| [STATE]: | And if I don't do that, you have to vote not guilty. |
| [JUROR 34]: | Right. |
| [STATE]: | That's your duty. |
| [JUROR 34]: | (Juror nods head affirmatively.) |
| [STATE]: | Right? |
| [JUROR 34]: | Right. |
| [STATE]: | And you can do that. |
| [JUROR 34]: | Yes. |
| [STATE]: | Thank you. Do you feel like you could be fair and impartial in this case if it came down to a close question? |
| [JUROR 34]: | Yes. |

The district court denied Jackson's motion to excuse Juror 34 for cause.

On appeal, Jackson contends that Juror 34 expressed two specific biases that required the district court to grant his motion to excuse the juror for cause. First, Juror 34 expressed that she would believe the testimony of the nine-year-old girl over Jackson's testimony if the case was purely his word against hers; and second, she expressed an inability to hold the State to its burden of proof. Jackson argues that the State's question regarding whether Juror 34 would be fair and impartial was only inquiring about her ability to hold the State to its burden of proof. Therefore, Jackson claims that Juror 34's assertion of impartiality did not cure her bias that she would believe the girl's testimony over Jackson's testimony. We disagree. The State specifically asked Juror 34 if she would be fair and impartial if the case came down to a close question. Certainly, a case predicated on whether to believe Jackson's testimony or the testimony of the victim could be classified as a case that came down to a "close question." Juror 34's unequivocal affirmation that she would hold the State to its burden and be fair and impartial was sufficient to cure any bias the juror previously expressed. In such situations, "[t]he court is entitled to rely on assurances from venire persons concerning partiality or bias." *Nightengale*, 151 Idaho at 353, 256 P.3d at 761 (quoting *State v. Hairston*, 133 Idaho 496, 506,

4

988 P.2d 1170, 1180 (1999)). Accordingly, the district court did not abuse its discretion in denying Jackson's motion to remove Juror 34 for cause.

Further, even if Juror 34's affirmations were not sufficient to cure her bias towards Jackson, Jackson failed to show that he was prejudiced by the district court's decision not to remove the juror for cause. Jackson removed Juror 34 from the jury using a peremptory challenge. When a party uses one of it peremptory challenges to remove a juror it argues should have been removed for cause, the party must show on appeal that he was prejudiced by being required to use a peremptory challenge to remove the juror. *Nightengale*, 151 Idaho at 354, 256 P.3d at 762. Jackson argues that he was prejudiced because two allegedly biased jurors, Jurors 54 and 57, remained on the jury after he had exhausted his peremptory challenges. Jackson asserts that he could have used a peremptory challenge to remove one of the biased jurors if the district court removed Juror 34 for cause.

In voir dire, the prosecutor noted that he knew Juror 54's husband and son, and that he was somewhat acquainted with her. He then asked if that affiliation would sway her, to which she responded, "It might." The prosecutor then asked if she could still be fair to Jackson, and Juror 54 responded, "Yes."

Jackson contends that Juror 54's statement that she "might" be swayed by her affiliation with the prosecutor created a bias against him. However, Juror 54 expressly indicated that she would be fair to Jackson despite her acquaintance with the prosecutor. As discussed above, the court is entitled to rely on assurances from venire persons concerning bias.

Next, Jackson claims that Juror 57 was biased against him. Juror 57 asked the judge for a private conversation regarding her experience with child abuse. She told the judge, "I do have a personal experience from when I was a child that I believe I can be impartial; however, I guess my worry would be that you know in this full swing of a trial, I don't know how I would feel later." Upon inquiry, the juror explained that she had always been able to hold her emotions in check. She then agreed that she would be able to wait until she saw all the evidence before making any decision regarding Jackson's guilt. When asked whether she would believe the girl over the testimony of Jackson, Juror 57 stated:

> No. I would say not. I've also had firsthand experience with a child who wasn't honest about something like that so I've experienced both sides of that so that is the reason why I believe I could be impartial because I'm open to listen to both sides of that.

5

On appeal, Jackson argues that Juror 57 was biased against him because she never backed away from her concern that she could not be impartial in the case. However, the record indicates that Juror 57 expressly stated, on two occasions, that she believed she could be impartial. Further, Juror 57 also unequivocally committed to waiting until all the evidence was presented before making any determinations. Therefore, Jackson is unable to show that Juror 57 was biased. Accordingly, Jackson has failed to demonstrate that he was prejudiced by the district court's refusal to excuse Juror 34 for cause.

## B.      Appointed Counsel for Rule 35 Motion

A criminal defendant has a right to counsel at all critical stages of the criminal process, including pursuit of a Rule 35 motion. I.C. § 19-852(b)(3); *Murray v. State*, 121 Idaho 918, 923 n.3, 828 P.2d 1323, 1328 n.3 (Ct. App. 1992). Pursuant to former I.C. § 19-852(b)(3),[1] a "needy person" entitled to be represented by an attorney is entitled:

> to be represented in any other post-conviction or post-commitment proceeding that the attorney or the needy person considers appropriate, unless the court in which the proceeding is brought determines that it is not a proceeding that a reasonable person with adequate means would be willing to bring at his own expense and is therefore a frivolous proceeding.

Additionally, former I.C. § 19-854(b)[2] states:

> In determining whether a person is a needy person and in determining the extent of his inability to pay, the court concerned may consider such factors as income, property owned, outstanding obligations, and the number and ages of his dependents. Release on bail does not necessarily prevent him from being a needy person. In each case, the person shall, subject to the penalties of perjury, certify in writing or by other record such material factors relating to his ability to pay as the court prescribes.

Thus, a defendant may be denied appointment of counsel to assist in pursuing a Rule 35 motion if the trial court finds the motion to be frivolous or if the defendant failed to certify such material factors as the court prescribes. A determination of whether a motion for reduction of sentence is

---

[1]      Effective July 1, 2013, I.C. § 19-852 was amended and the term "indigent person" was substituted for "needy person."

[2]      Effective July 1, 2013, I.C. § 19-854 was amended in various ways, including requiring a court to presume that a person was indigent if that person fell under a certain category. One such category includes a person currently serving a sentence in a correctional facility.

6

frivolous for purposes of applying former I.C. § 19-852(b)(3) is based on the contents of the motion itself and any accompanying documentation that may support the motion. *State v. Wade*, 125 Idaho 522, 525, 873 P.2d 167, 170 (Ct. App. 1994). Any colorable merit to a Rule 35 motion must arise from new or additional information that would create a basis for reduction of the sentence. *Id*.

When a court is presented with a request for appointment of counsel, the court must address that request before rendering a ruling on the substantive issues in the underlying case. *Charboneau v. State*, 140 Idaho 789, 792, 102 P.3d 1108, 1111 (2004). Based on the actions of the district court to deny the appointment of counsel and Rule 35 motions, we consider whether substantial evidence exists in the record to support the implicit finding that the Rule 35 motion was frivolous. *See State v. DuValt*, 131 Idaho 550, 553, 961 P.2d 641, 644 (1998) ("[A]ny implicit findings of the trial court supported by substantial evidence should be given due deference."); *State v. Kirkwood*, 111 Idaho 623, 625, 726 P.2d 735, 737 (1986) (holding implicit findings of the trial court should be overturned only if unsupported by evidence).

Here, Jackson filed a motion and affidavit in support for the appointment of counsel to pursue his Rule 35 motion. However, Jackson failed to notarize his affidavit in support of his motion. More importantly, he failed to file a financial affidavit with the court. The district court denied his motion for appointment of counsel because the court was unable to determine whether he was indigent for the purpose of the motion.

On appeal, Jackson contends that the district court erred by denying his motion on the basis that the affidavit in support of the motion was not notarized. First, Jackson argues that he had a justifiable reason for not notarizing the affidavit as he was placed in protective custody and unable to arrange a meeting with a notary before the deadline to file his motion. However, as the State points out, the record indicates that Jackson filed his Rule 35 motion nearly forty days prior to the deadline. By his own admission, Jackson spent only twenty-one days in protective custody. Even if his placement in protective custody prevented him from notarizing his affidavit, Jackson still had the ability to notarize the affidavit and file it with the court prior to the deadline once he was removed from protective custody.

Second, Jackson asserts that information regarding his indigency was already before the district court because he filed a motion to appoint appellate counsel which stated that he exhausted all his financial resources. Pursuant to I.C. § 19-854(a), the court is required to

7

determine whether Jackson is a needy person. Jackson filed motions for appointment of counsel for both his Rule 35 motion and his appeal. Therefore, the district court was required to determine, *with respect to each proceeding*, whether Jackson was a needy person with respect to both the Rule 35 and appellate proceedings. The district court concluded that Jackson was a needy person for the purpose of an appeal, but the court conveyed that it did not have enough information to determine whether Jackson was a needy person for the purpose of his Rule 35 motion. On appeal, Jackson claims that the district court should have found him indigent for the purpose of his Rule 35 motion since the court found him indigent for the purpose of his appeal. However, under the statute, the court is required to make a determination with respect to each proceeding. The court's determination that Jackson was a needy person for the purpose of his appeal was not dispositive of his motion for appointment of counsel for his Rule 35 motion. The court recognized this when it stated, "The Court considers Mr. Jackson indigent for the purposes of an appeal where the legal fees would be thousands of dollars and Mr. Jackson has no income. For a Rule 35 motion, however, Mr. Jackson may have sufficient resources to pay for private counsel." However, Jackson failed to provide the district court with the necessary information for the court to determine whether counsel was needed for his Rule 35 motion.[3] The burden of making an initial showing of need rests on the defendant. I.C. § 19-854(b); *Quinlivan v. State*, 94 Idaho 334, 335, 487 P.2d 928, 929 (1971).

Third, Jackson claims that the district court's decision was in err because it exalted form over substance. However, Jackson did not simply fail to notarize his affidavit in support, but he also failed to provide the court with a financial affidavit. Even if his affidavit in support was notarized, Jackson still failed to provide the court with pertinent information necessary for the court to make a determination. For instance, Jackson's unnotarized affidavit contained no information regarding his income, outstanding obligations, or the number of his dependents, which are factors that the court may consider pursuant to former I.C. § 19-854. Therefore, Jackson failed to establish that he was a needy person with respect to his Rule 35 motion and thus, the district court did not err in denying his motion for appointed counsel.

---

[3] In fact, in regard to Jackson's request for appellate counsel, the court was informed that while he was unemployed, incarcerated, and had "no assets, bank accounts, stocks, [or] bonds," other "item[s] of value in his name [were] estimated at a total of $4,000." From this the court could well determine that Jackson did not have enough resources for appeal but enough to present a Rule 35 motion.

Even if Jackson was a needy person pursuant to I.C. § 19-854, the district court did not err in denying his motion for appointment of counsel because his Rule 35 motion was frivolous. A determination of whether a motion for reduction of sentence is frivolous for purposes of applying I.C. § 19-852(b)(3) is based upon the contents of the motion itself and any accompanying documentation that may support the motion. Thus, the issue presented is one of law which we freely review. *State v. Wade*, 125 Idaho 522, 525, 873 P.2d 167, 170 (Ct. App. 1994). Here, Jackson did not provide the district court with any new information in support of his Rule 35 motion. His motion essentially claimed that he was wrongly convicted, that he did not get a fair trial, and that his release could save lives because he wanted to donate blood. Jackson also provided the district court with a letter.[4] The district court found that the letter challenged the effectiveness of his trial counsel, the sufficiency of the evidence presented at trial, and the fairness of the judicial process. The district court did not address the issues in the letter, finding that a Rule 35 motion was not the proper venue to raise issues more appropriately raised on direct appeal. We agree. The purpose of a Rule 35 motion is to correct or reduce the sentence as imposed. *State v. Johnson*, 117 Idaho 650, 652, 791 P.2d 31, 33 (Ct. App. 1990). The issues raised by Jackson in his motion and letter were improperly raised under a Rule 35 motion. Jackson failed to provide the court with any new information in support of his motion.[5] Therefore, we conclude that his Rule 35 motion was frivolous and the district court did not err in denying his motion for appointment of counsel.

---

[4] The record contains several letters written by Jackson and sent to various people, including the court. The letters were not attached as exhibits to Jackson's Rule 35 motion. It is unclear what letter the court considered in denying Jackson's Rule 35 motion.

[5] Jackson claims that he presented new evidence because his letter informed the court that he had low testosterone levels that indicated he had no sex drive. This evidence was allegedly presented in Jackson's first trial, but not his second trial. However, Jackson provided no admissible evidence to the district court, beyond his own statements, to establish that he had low testosterone levels that would lower his sex drive. Additionally, Jackson made this statement in his letter when arguing that his attorney was ineffective for failing to present his testosterone levels as evidence in his second trial.

### III.

### CONCLUSION

The district court properly denied Jackson's motion to excuse Juror 34 for cause and Jackson's motion for appointment of counsel. Accordingly, the district court's judgment of conviction and the court's orders denying Jackson's motion for appointment of counsel and denying his Rule 35 motion are affirmed.

Chief Judge GUTIERREZ **CONCURS.**

Judge LANSING, **DISSENTING IN PART**

I concur in all of the foregoing opinion except Section II(B) regarding the trial court's denial of Jackson's request for appointment of counsel to represent him on an Idaho Criminal Rule 35 motion for reduction of his sentence. As the majority opinion states, at the time in question, Idaho statutes provided that an individual wishing appointment of counsel to represent him in a Rule 35 motion needed to show that he was "a needy person" and that his motion would be a proceeding that a reasonable person with adequate means would be willing to bring at his own expense and therefore would not be frivolous. *See* former I.C. §§ 19-852 and 19-854. I respectfully disagree with the majority's conclusion that Jackson did not meet his burden on either of these factors.

To show that he was a needy person as defined in former I.C. § 19-854, Jackson submitted a signed statement that was in the form of an affidavit, but not notarized, which averred that he was indigent and without any funds to hire private counsel and without any bank accounts, stocks, bonds, real estate, or any other form of real property. The court file contains a letter that he wrote to Alexandria Lewis, whose position is not identified but who is apparently on the staff of the Kootenai County court or court clerk. The letter explained that Jackson's affidavit was not notarized because he was placed in protective custody and was consequently unable to access a notary public.[1] In addition to the unnotarized affidavit's statement of his

---

[1] The State points out, and the majority opinion notes, that Jackson would have had nearly forty additional days within which to get his affidavit notarized before the filing deadline for a Rule 35 motion. It is not apparent, however, that Jackson was aware of the true filing deadline. He was sentenced on August 16, 2011, but the judgment of conviction was not entered until September 16, 2011. Rule 35 provides that the 120-day time limit for filing a motion begins upon the date of entry of the judgment. Jackson may not have realized that the filing of the judgment was delayed for a month after the sentencing hearing and therefore may have believed

indigency, the record indicates that Jackson had been in custody for approximately three months prior to sentencing and had been in the custody of the Idaho Department of Correction for another three and one-half months before he filed his Rule 35 motion. Thus, he had been unemployed for, at a minimum, about half a year. Further, the court had already appointed counsel to represent Jackson on appeal. Although I do not disagree with the district court's view that a person who is without sufficient resources to bring an appeal may nevertheless have the financial wherewithal to hire counsel for a Rule 35 motion, the record here, including Jackson's unnotarized affidavit, indicates that he was without financial resources to hire an attorney even for that limited purpose. The majority opinion refers to a statement by Jackson's withdrawing private counsel that Jackson had items of value estimated at a total of $4,000. However, the PSI indicates that these items of value were three vehicles and a motorcycle with a combined value of $4,600. It is not apparent how Jackson could have quickly sold these items from his position in the custody of the Department of Correction in order to raise funds to hire an attorney.[2] For these reasons, it is my view that the district court erred in not determining that Jackson was a needy person.

The other query of relevance is whether Jackson's desired Rule 35 motion was a proceeding that a person of adequate means would have been willing to bring at his own expense. A motion for reduction of a sentence under Rule 35 is a request for leniency that may be granted in the discretion of the trial court. *State v. Knighton*, 143 Idaho 318, 319, 144 P.3d 23, 24 (2006). Jackson received three concurrent, unified life sentences with fifteen years determinate on his first conviction for a criminal offense of any kind. Given the substantial nature of his sentence, I conclude that a person with adequate means to hire counsel would have desired to bring a motion for reduction of the sentence at his own expense, and therefore it was

that his filing deadline expired in mid-December. That Jackson was under this misunderstanding about the filing deadline is indicated in his letter to Alexandria Lewis where he states that he "hopes you will ask the Honorable Steven Verby to appoint me counsel and extend the time limit for filling [sic] my Rule 35 by at least two weeks or more."

[2] Nevertheless, the existence of these resources may have justified an order to reimburse the county for the cost of court-appointed counsel pursuant to former I.C. § 19-854(d).

not frivolous.[3] The district court, like the majority here, looked at the grounds stated by Jackson in support of his pro se Rule 35 motion and held that on *those* grounds the motion was frivolous. In my view, when the question is whether an indigent defendant should have been appointed counsel to help him craft a Rule 35 motion, it is inappropriate to look solely at the pro se product to determine whether a nonfrivolous motion could have been filed.

Accordingly, I would reverse the order denying Jackson's pro se Rule 35 motion and remand for appointment of counsel to represent him in Rule 35 proceedings.

---

[3] By stating that the motion would not be frivolous under the standard stated in former I.C. § 19-852, I do not imply any opinion as to whether such a motion would or should have been granted had Jackson received the assistance of counsel.