𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

BUDDY EARL JUSTUS

v.

COMMONWEALTH OF VIRGINIA

April 18, 1980.

Record No. 791326.

Present: All the Justices.

972

*H. Gregory Campbell, Jr. (Robert W. Spessard, Jr.; Gilmer, Sadler, Ingram, Sutherland & Hutton; Spessard & Spessard,* on briefs), for appellant.

*Jerry P. Slonaker, Assistant Attorney General (Marshall Coleman, Attorney General,* on brief), for appellee.

HARRISON, J., delivered the opinion of the Court.

A jury convicted Buddy Earl Justus of willful, deliberate, and premeditated killing during the commission of, or following rape, Code § 18.2-31(e), and, after a penalty proceeding, recommended that his punishment be fixed at death. Following receipt of the post conviction report of a probation officer, the trial court held a sentencing hearing, confirmed the jury's verdict, and ordered that Justus be executed. Code §§ 19.2-264.3 through -264.5. The defendant sought and is entitled to this appellate review of sentence as a matter of right, Code § 17.110.1(A), and it, along with the appeal of his conviction, has been given priority on our docket. Code § 17.110.2. The defendant requests, alternatively, that we reverse and remand for trial upon the capital murder charge or that we commute the death sentence to life imprisonment.

The offense in question occurred in Montgomery County. The evidence at trial established that Ida Mae Moses was found dead by her husband in their home around 2 p.m. on October 3, 1978. The

nude body of the decedent was lying lengthwise on her back across a bed in one of the bedrooms. An autopsy revealed that Mrs. Moses had been shot twice in her face and once in the back of her head. Seminal fluid of a blood type consistent with that of the defendant was found matted in the pubic hairs of the victim and also inside her vagina. A pathologist testified that Mrs. Moses was carrying a "near term" fetus at the time she was murdered.

Justus was apprehended and confessed that he entered and burglarized the Moses home and murdered Ida Mae Moses with a firearm. On May 29, 1979, the defendant was arraigned and, with the consent of the court and counsel, and in the presence of the venire, entered a plea of guilty to indictments charging him with the statutory burglary of the Moses home and of using a firearm while committing her murder. He entered a plea of not guilty to the charge of capital murder, *i.e.,* "murder during the commission of or subsequent to rape of Ida Mae Moses."

On this appeal Justus has raised numerous questions concerning both his conviction and his sentence. These questions relate to pretrial procedures and incidents of both the guilt and penalty trials. The defendant contends that the trial court erred in refusing to exclude for cause on voir dire six prospective jurors. Specifically, he asserts that the answers given by Jennifer Swain clearly demonstrate that she was not indifferent and impartial, and therefore that she was not qualified for the jury panel.

Swain admitted that she had acquired information about the Moses murder through newspapers, television, and the radio. When asked if this would affect her impartiality in being a juror, she answered, "It could, it could, yes." When asked in what manner, she responded, "Well, I, think he's guilty. . . . Just from what I've read and heard." The trial judge then asked a series of questions designed to rehabilitate this prospective juror. He advised her that the defendant was presumed to be innocent, and that she should be guided by what she heard from the witness stand and the instructions. He asked Swain if there was any reason why she could not wipe out all that she had read and heard and give the defendant and the Commonwealth a fair and impartial trial. Swain answered "no" to this question, and also answered "no" when asked if she was sensible to any bias or prejudice toward Justus.

In responding to questions posed by counsel for the defendant, however, Swain said that she had read and heard about the case and that "from what I heard they thought she was murdered and she was pregnant. . . [a]nd raped." Counsel asked Swain, "Do you believe

that she was raped by Mr. Justus?" She answered, "Yes." Swain said that she had discussed the case with other people and that most were of the opinion that Justus was guilty. Swain was questioned whether, if it developed through the Commonwealth's evidence that Mrs. Moses was pregnant, if that would cause her to have any more concern about the case. Swain responded, "That is another life." Then, when asked if the victim's pregnancy would cause her to feel more like convicting the man, she responded, "Perhaps." Swain testified that she vaguely knew Frank Moses, the husband of the victim, that he was in her class in high school, and that she had never heard anything bad about him. When asked, "[Y]ou expressed earlier an opinion that he [Justus] probably was guilty. Would, would it take evidence ...to...change that opinion?", she answered, "Yes." And when asked if there were to be no evidence from the defendant, "I assume, your opinion then would, would hold?", she said, "Yes."

In a further effort to rehabilitate Swain, the Commonwealth's Attorney reminded her that she had heard Justus plead guilty to breaking and entering the Moses home with intent to commit larceny, of using a firearm in the murder of Mrs. Moses, that the Commonwealth did not have to prove these offenses beyond a reasonable doubt, and further that the only question for the jury was whether or not at the time of her murder, Justus raped Mrs. Moses. When asked if she had an opinion as to his guilt or innocence of that charge, she responded, "no," and that she understood that the burden was upon the Commonwealth to prove that offense beyond a reasonable doubt.

Swain was challenged for cause by counsel for the defendant, but their motion that she be disqualified was overruled.

■ While grave questions were raised concerning the ability of the other five veniremen to sit impartially, we need only consider the action of the trial court in refusing to exclude for cause Jennifer Swain. Code § 8.01-357 assures a defendant a right to an impartial jury drawn from "a panel [of twenty] free from exceptions," and it is prejudicial error for the trial court to force a defendant to use the peremptory strike afforded him by Code § 19.2-262 to exclude a venireman who is not free from exception.* *Breeden* v. *Commonwealth*, 217 Va. 297, 300, 227 S.E.2d 734, 737 (1976), *Dowdy* v. *Commonwealth,* 50 Va. (9 Gratt.) 727, 737 (1852).

As we pointed out in *Breeden, supra,* the right of an accused to trial by "an impartial jury" is a constitutional right, reinforced by

---

* While not relevant to our decision, or shown by the record, the Attorney General apparently concedes that the defendant used one of his peremptory strikes to remove Jennifer Swain from the jury panel.

legislative mandate and by the Rules of this court. Any reasonable doubt that a venireman does not "stand indifferent in the cause" must be resolved in favor of the accused. *Id.* at 298, 227 S.E.2d at 735.

In *Wright* v. *Commonwealth,* 73 Va. (32 Gratt.) 941, 943 (1879), we said:

> [A prospective juror] must be able to give [the accused] a fair and impartial trial. Upon this point nothing should be left to inference or doubt. All the tests applied by the courts, all the enquiries made into the state of the juror's mind, are merely to ascertain whether he comes to the trial free from partiality and prejudice.
>
> If there be a reasonable doubt whether the juror possesses these qualifications, that doubt is sufficient to insure his exclusion. For, as has been well said, it is not only important that justice should be impartially administered, but it should also flow through channels as free from suspicion as possible.

In *Slade* v. *Commonwealth,* 155 Va. 1099, 1106, 156 S.E. 388, 391 (1931), we said:

> It is the duty of the trial court through the legal machinery provided for that purpose to procure an impartial jury to try every case. A juror who is influenced by his bias or prejudice or who has a fixed opinion about the case is not a competent juror. The issue of who is, or is not, a competent juror is one for the trial court to decide, and in making its decision the court may exercise a reasonable discretion. Ordinarily, if that discretion has not been abused the trial court's decision on that matter is final.
>
> The opinion entertained by a juror, which disqualifies him, is an opinion of that fixed character which repels the presumption of innocence in a criminal case, and in whose mind the accused stands condemned already.

These well established principles have been applied by this court strictly and consistently. *See Breeden, supra; Salina* v. *Commonwealth,* 217 Va. 92, 225 S.E.2d 199 (1976); *Farrar* v. *Commonwealth,* 201 Va. 5, 109 S.E.2d 112 (1959); *Dejarnette* v. *Commonwealth,* 75 Va. 867 (1881).

We find it apparent that what Mrs. Swain had seen and heard in the news media, and discussed with the people in the community, had made a deep and abiding impression on her. It is not this knowledge alone, however, that disqualified her. We have often said that

jurors are not required to be totally ignorant of the facts and issues involved in a case on which they sit. *Breeden, supra,* 217 Va. at 300, 227 S.E.2d at 736; *Charlottesville Music Cen.* v. *McCray,* 215 Va. 31, 38, 205 S.E.2d 674, 679 (1974); *Greenfield* v. *Commonwealth,* 214 Va. 710, 717, 204 S.E.2d 414, 420 (1974). And a juror is not disqualified because he has never previously served on a jury, has no knowledge of the duties of a juror, or is without formal education. With random jury selection this will often occur and presents a situation with which trial judges will have to deal as intelligently and patiently as possible. It will obviously require a greater effort on the part of trial courts to rehabilitate prospective jurors who become confused during their voir dire examination. This, in part, explains the extensive voir dire examination conducted by the trial judge and by counsel of the veniremen called in the instant case.

The fact, however, that Swain ultimately said that she could give the defendant and the Commonwealth a fair and impartial trial is not sufficient to overcome her positive and unequivocal testimony that she thought Justus was guilty from what she had heard and read. She testified that what she read could affect her impartiality and that she believed Mrs. Moses was raped by Justus. She also said that most of the people with whom she had discussed the case thought the defendant was guilty. She was concerned about the pregnancy of Mrs. Moses and the fact that another life was involved. Her opinion of defendant's probable guilt was such, she said, that if no evidence was forthcoming from him, that opinion would persist. Clearly, in view of her expressed state of mind concerning the defendant's guilt, no amount of rehabilitation could have qualified Swain as a juror who would stand impartial and free from prejudice.

In *Armistead* v. *The Commonwealth,* 38 Va. (11 Leigh) 657, 659-60 (1841), we reaffirmed the rule laid down by the court in *Osiander* v. *The Commonwealth,* 30 Va. (3 Leigh) 780 (1831):

[T]hat he who has formed and expressed a decided opinion, that the prisoner is guilty or innocent of the offense for which he is about to be tried, whether that opinion be formed on the evidence of witnesses whose testimony he has heard on a former trial, conversation with witnesses, or common report, is not fit to sit upon his trial. We go further, and say, that it is immaterial whether that opinion has been expressed or not.

\*     \*     \*

It is vain for a man in this state of mind to say, that he would give the prisoner a fair trial; that he was not prejudiced against him;

that he would judge him by the evidence, and decide according to the evidence. Whatever confidence he may have in his ability to erase from his mind the impressions made by his conversation with the prosecutor, of whose respectability and veracity he has no doubt, the law has no confidence in him; however willing he may be to trust himself, the law will not trust him.

Because this case will be remanded for a new trial, and we cannot anticipate what the evidence will be, it is improper for us to consider several of the assignments of error made by the defendant. We do respond, however, to those assignments which will inevitably be at issue in any subsequent proceeding.

■ The court did not commit error in refusing to grant the defendant a private psychiatric examination at the expense of the Commonwealth. *Mason* v. *Commonwealth,* 219 Va. 1091, 254 S.E.2d 116 (1979). *See also Proctor* v. *Harris,* 413 F.2d 383 (D.C. Cir. 1969). The record shows that the defendant was first examined by Dr. Lawrence Bennett, described as a physician skilled in the diagnosis of insanity. The defendant was sent to Southwestern State Hospital, and a report as to his condition was filed by Dr. Frank F. Merker. Thereafter the defendant was returned to Southwestern State Hospital for further mental evaluation and was examined by Dr. Merker, Dr. Delano W. Bolter, another psychiatrist, and Dr. Jay Harper, a clinical psychologist. The trial court, in its discretion, properly concluded that no additional testing was necessary.

Neither did the trial court err by refusing to order a post conviction psychiatric examination pursuant to Code § 19.2-300. The statute provides that in case of a conviction in a court of record of any person for any criminal offense which indicates sexual abnormality, sentencing shall be deferred by the trial court on its own initiative or upon application by the attorney for the Commonwealth or by the defendant pending mental examination of the defendant to guide the court in determining what disposition should be made of the defendant. It is provided in Code § 19.2-301 that such a mental examination is not necesary if a prior mental report was submitted during the proceedings.

■ The Commonwealth is charged in a capital murder case with the burden of not only proving guilt beyond a reasonable doubt but of proving aggravating circumstances beyond a reasonable doubt. The court did not err in permitting the Commonwealth's Attorney to make both the opening and closing arguments before the jury at the sentencing phase of defendant's bifurcated trial. *Waye* v. *Common-*

*wealth,* 219 Va. 683, 701, 251 S.E.2d 202, 213, *cert. denied,* 442 U.S. 924 (1979); *Smith* v. *Commonwealth,* 219 Va. 455, 480, 248 S.E.2d 135, 150 (1978), *cert. denied,* 441 U.S. 967 (1979). The fact that the defendant conceded he had committed an aggravated battery did not relieve the Commonwealth of the duty of showing the defendant's conduct to be "outrageously or wantonly vile, horrible or inhuman." Code § 19.2-264.4(C).

■ The court properly refused an instruction offered by the defendant which would have told the jury that if it could not reach agreement as to the appropriate punishment, the court would dismiss it and impose a life sentence. While this was a correct statement of law it concerned a procedural matter and was not one which should have been the subject of an instruction. It would have been an open invitation for the jury to avoid its responsibility and to disagree. Neither did the court err in refusing to grant proffered instructions defining the terms "vile" and "wantonly." Both terms are defined by statute, Code § 19.2-264.2, and the statutory language was recited in an instruction which was given the jury. The argument advanced by the defendant has been considered and rejected by this court. *See Coppola* v. *Commonwealth,* 220 Va. 243, 254-255, 257 S.E.2d 797, 805 (1979); *Clark* v. *Commonwealth,* 220 Va. 201, 211, 257 S.E.2d 784, 790 (1979), *cert. denied,* 444 U.S. 1049 (1980); *Smith* v. *Commonwealth, supra,* 219 Va. at 478, 248 S.E.2d at 149.

■ The trial court did not err in permitting the Commonwealth to show that the victim of the crime was pregnant at the time she was murdered, and to introduce in evidence at the first stage of the trial a black and white photograph of the nude victim. The offense charged was murder while in the commission of or subsequent to rape. It was necessary for the Commonwealth to show that the assault was committed by the defendant with force and without the consent of the victim. The size, height, weight, and physical condition of the victim were all pertinent factors to be considered by the jury in determining the amount of force that was used by the defendant to accomplish the rape, and the resistance that was offered by the victim, or that she was capable of offering. Defendant claimed that he shot the victim when she walked, completely nude, out of a closet or bathroom. The photograph was offered to contradict this testimony, to show the location of certain articles of clothing entangled around the victim's arm and thumb, and to show other articles that were lying on the floor, or located elsewhere in the room. The advanced state of pregnancy of the victim, obvious from the picture, rendered remote the possibility that the victim would have had intercourse voluntarily with anyone,

and a reasonable explanation for the semen that was found in and on her body was that it was the result of a rape committed during the course of the killing, an act (the killing) which Justus has admitted.

■ The two color photographs of the victim were admissible at the sentencing stage of the bifurcated trial to show the extensive mutilation of the victim's face caused by the gunshot wounds inflicted on Mrs. Moses at contact range. The evidence was admissible to show that the defendant's conduct was outrageously and wantonly vile, horrible and inhuman, in that it involved torture, depravity of mind, or aggravated battery to the victim. Code § 19.2-264.4(C). Were we to hold, contrary to what the statute mandates, that this evidence is too prejudicial for a jury to see, we would in effect hold that, while the Commonwealth is charged with showing aggravating circumstances, if the circumstances are too aggravated and too vile they should not be shown.

■ The court correctly refused to permit the attorney for the Commonwealth to ask the medical examiner if from his examination there was any indication that the fetus was alive at the time of the murder. While it was proper to show the advanced stage of pregnancy of the victim, testimony regarding the fetus had no probative value in determining the guilt of the accused or his punishment. Questions regarding the viability of the fetus should be avoided in any future trial of the case as being irrelevant.

■ We find no error in the action of the court in refusing defendant's motion for a change of venue. This was a matter within the sound discretion of the trial court, and there is no evidence that its discretion was abused. On the contrary, it appears that of thirty veniremen summoned, only ten were struck for cause, six were objected to but not struck, and fourteen were accepted by both the Commonwealth and the defendant without objection.

For the failure of the trial court to strike from the venire the prospective juror Swain for cause, the verdict of the jury convicting the defendant is set aside, the judgment of the court below is reversed, and the defendant is awarded a new trial.

*Reversed and remanded*
*for a new trial.*