COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Annunziata and Overton
Argued at Norfolk, Virginia


ZACKARY ANTHONY CARTER, S/K/A
 ZACKERY ANTHONY CARTER
                                  MEMORANDUM OPINION* BY
v.  Record No. 2862-97-1       JUDGE JAMES W. BENTON, JR.
                                     JANUARY 12, 1999
COMMONWEALTH OF VIRGINIA


        FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                    Frederick B. Lowe, Judge

            Melinda R. Glaubke (Thomas L. Watkins, on
            brief), for appellant.

            Eugene Murphy, Assistant Attorney General
            (Mark L. Earley, Attorney General, on brief),
            for appellee.


        A jury convicted Zackery Anthony Carter of murder in the

second degree and use of a firearm in the murder.  Carter

contends that the trial judge erred in refusing to strike for

cause seven jurors.  Because we conclude that one of the jurors

should have been excused for cause, we reverse the convictions

and remand for a new trial.

        The right to a trial by "an impartial jury" is guaranteed by

both the United States and Virginia Constitutions.  <u>See</u> U.S.

Const. amends. VI and XIV; Va. Const. art. I, § 8.
                    "[A prospective juror] must be able to give
                    [the accused] a fair and impartial trial.
                    Upon this point nothing should be left to
                    inference or doubt.  All the tests applied by
                    the courts, all the enquiries made into the
                    state of the juror's mind, are merely to

---

        *Pursuant to Code § 17.1-413, recodifying Code § 17-116.010,
this opinion is not designated for publication.

                    ascertain whether [the juror] comes to the
                    trial free from partiality and prejudice."

Breeden v. Commonwealth, 217 Va. 297, 298, 227 S.E.2d 734, 735

(1976) (quoting Wright v. Commonwealth, 73 Va. (32 Gratt.) 941,

943 (1879)).

        In determining whether a juror's responses during voir dire

have indicated an impartial state of mind, we must view those

responses within the context of the entire voir dire of that

juror.  Sizemore v. Commonwealth, 11 Va. App. 208, 212, 397

S.E.2d 408, 411 (1990).  If the voir dire establishes that the

juror "holds a preconceived view that is inconsistent with an

ability to give an accused a fair and impartial trial, or . . .

persists in a misapprehension of law that will render [the juror]

incapable of abiding the court's instructions and applying the

law, [the trial judge] must . . . exclude[] [the juror] for

cause."  Id. at 211, 397 S.E.2d at 410.

        The principle is well established that "[t]o qualify as a

juror, a venireman must 'stand indifferent in the cause' and any

reasonable doubt regarding [the juror's] impartiality must be

resolved in favor of the accused."  Barker v. Commonwealth, 230

Va. 370, 374, 337 S.E.2d 729, 732-33 (1985) (citation omitted).
                    "If there be a reasonable doubt whether the
                    juror [is impartial and free from prejudice],
                    that doubt is sufficient to insure [the
                    juror's] exclusion.  For . . . it is not only
                    important that justice should be impartially
                    administered, but it should also flow through
                    channels as free from suspicion as possible."

Breeden, 217 Va. at 298, 227 S.E.2d at 735 (citation omitted).

- 2 -

When examined on voir dire, the venireman DeWoody stated that he was informed about the case from both television and the newspapers. DeWoody recognized Carter from the media exposure and was able to recall with significant detail certain events that occurred around the time of the killing. DeWoody also recalled from television reports that an earlier trial ended because of "a mistrial," stating "I believe it was a hung jury." When asked if he could recall whether he had formed any opinion as to guilt or innocence, DeWoody responded "Guilt. It is how it was portrayed in the media. They don't usually do both sides." When asked if he could put out of his mind the reports he had seen about the case, DeWoody said, "As best I can, yes."

DeWoody also responded as follows to a series of questions:

[COUNSEL]: Do you understand the defendant does not at any time throughout the entire trial have to put on any evidence to prove his innocence?

[DEWOODY]: Yes.

[COUNSEL]: Would you expect the defendant to present some evidence on his own behalf to prove his innocence?

[DEWOODY]: Yes.

[COUNSEL]: Again, with that idea in mind -- and, again, this is one of those areas I just have to ask you -- knowing this is the law, how do you really feel about it is what we are getting at? You would expect a defendant to prove to you in some fashion that he did not commit the crime?

[DEWOODY]: Yes.

[COUNSEL]: Even though you are told the law is he doesn't have to?

    [DEWOODY]:  Yeah.

    [COUNSEL]:  Would that law be difficult for
    you to follow, if not impossible, for you to
    follow?

    [DEWOODY]:  I don't think so.  Just
    preconceived notions.

    [COUNSEL]:  So you would think -- if I'm
    putting words in your mouth, tell me.  You
    would think if a person was innocent, they
    would prove that to you?

    [DEWOODY]:  Yes.

No further inquiries were made in this area.

In Breeden, where a prospective juror affirmatively indicated that she expected the defendant to prove his innocence, the Supreme Court ruled that her response "was not so much a symptom of her ignorance of the law as a candid reflection of the state of her mind concerning [the defendant's] guilt."  Id. at 300, 227 S.E.2d at 736.  We believe that the same can be said of DeWoody's responses that he expected Carter to present evidence and to prove his innocence.  Although DeWoody acknowledged that the law did not require Carter to put on evidence to prove his innocence, DeWoody clearly indicated that he expected an innocent person to put on evidence that proved that person's innocence.

"'The opinion entertained by a juror, which disqualifies him, is an opinion of that fixed character which repels the presumption of innocence in a criminal case, and in whose mind the accused stands condemned already.'"  Justus v. Commonwealth, 220 Va. 971, 976, 266 S.E.2d 87, 91 (1980) (citation omitted).

- 4 -

Indeed, we have ruled that when a prospective juror "harbor[s] the . . . expectation that one accused and charged of criminal wrongdoing will produce evidence to prove his or her innocence . . . , unless the record affirmatively establishes that the juror['s] expectations of the defendant were not fixed, we must assume that the [juror was] seated while continuing to harbor the view that the defendant must prove his [or her] innocence, a disqualifying bias." Sizemore, 11 Va. App. at 212, 397 S.E.2d at 410-11.

DeWoody had specific knowledge of the case from the news media, had formed an opinion of guilt based on that information, and believed that Carter would have to put on some evidence to prove his innocence. DeWoody's opinion clearly expressed a state of mind "that is clearly at odds with an accused's presumption of innocence and his [or her] right not to have to produce evidence to establish his [or her] innocence." Id. at 212, 397 S.E.2d at 410. When a juror has expressed such a state of mind, that juror has raised a reasonable doubt about his or her ability to stand impartially. Thus, we hold that the trial judge, in concluding that DeWoody was qualified, did not discharge the "affirmative duty to secure an impartial jury for the parties." Educational Books, Inc. v. Commonwealth, 3 Va. App. 384, 390, 349 S.E.2d 903, 908 (1986).

Because the trial judge erred by not striking DeWoody from the jury, we need not address Carter's contention that the trial

judge erred by not striking any of the other six jurors.  For the reasons we have stated, we reverse the convictions and remand for a new trial.

<u>Reversed and remanded</u>.