COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Malveaux, Chaney and White

JOHN DENNIS TIPTON

v.      Record No. 0250-24-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION*
PER CURIAM
MAY 20, 2025

FROM THE CIRCUIT COURT OF ORANGE COUNTY
David B. Franzen, Judge

(Anthony D. Martin; Lepold & Martin, PLLC, on brief), for
appellant.

(Jason S. Miyares, Attorney General; Matthew P. Dullaghan,[1] Senior
Assistant Attorney General, on brief), for appellee.


A jury convicted John Dennis Tipton ("appellant") of object sexual penetration by force,

in violation of Code § 18.2-67.2. On appeal, appellant argues that the trial court erred in refusing

to strike a prospective juror for cause and denying his motion to strike the evidence because the

victim's testimony was incredible. After examining the briefs and record in this case, the panel

unanimously holds that oral argument is unnecessary because "the appeal is wholly without

merit"; additionally, "the dispositive issue or issues have been authoritatively decided" and "the

appellant has not argued that the case law should be overturned, extended, modified, or

reversed." Code § 17.1-403(ii)(a)-(b); Rule 5A:27(a)-(b). Finding no error, we affirm.

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Matthew P. Dullaghan became an employee of this Court on February 10, 2025. He has
had no involvement in the Court's review of this case.

## I. BACKGROUND

"On appeal, 'we review the evidence in the "light most favorable" to the Commonwealth,' the prevailing party below." *Diaz v. Commonwealth*, 80 Va. App. 286, 295 (2024) (quoting *Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (en banc)). This principle "requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom.'" *Id.* (quoting *Kelly v. Commonwealth*, 41 Va. App. 250, 254 (2003) (en banc)).

On July 23, 2022, 17-year-old S.C.[2] visited her friend B.C. at the house of B.C.'s mother, Amanda Tipton, who is appellant's wife. Amanda lived at the house with appellant and their three young children: C.T., V.T., and J.T. Appellant was not home when S.C. arrived. Around midnight, S.C. and B.C. moved a mattress into the downstairs living room and went to sleep. S.C. was wearing a t-shirt and fitted boxer briefs.

S.C. woke at some point during the night; she was lying on her stomach and a figure was on the floor inches away from her. B.C. was not there. Initially, S.C. thought she was dreaming. S.C. suddenly realized that she was not dreaming and that appellant's hand was inside her underwear, and his fingers in her vagina. At first, S.C. was frozen from shock and fright. S.C. then told appellant, "you need to get the F off of me," and ran upstairs. When S.C. told appellant to get off of her, appellant spoke back to her, but she could "barely understand him" because he slurred his words. Appellant had also urinated on himself and the mattress.

S.C. found B.C. in V.T.'s room, and woke her and told her that something had happened. B.C. went to tell Amanda, who declined to intervene. S.C. also texted her grandmother, Teresa Thompson, and asked to be picked up. Thompson arranged to pick S.C. up later that morning. S.C. remained in V.T.'s room with the door locked until appellant left the next morning.

---

[2] We use the initials of the victim and other minors, to protect their privacy.

Later that morning, S.C. went shopping with B.C., Amanda, the children, and their grandmother. When they returned to Amanda's house, appellant approached S.C., who told him not to speak to her. Appellant asked S.C. what was wrong; S.C. said that he had "ruined [her] life" because she "woke up with [his] hands in [her] pants." Appellant apologized. Amanda then drove S.C. to her grandfather's house.

Within a week of the incident, S.C. told her mother and grandmother about the incident. After talking to her grandmother, S.C. decided to report the assault to police. On September 16, 2022, S.C. provided police a written statement in which she stated that she "woke up to [appellant] touching [her]" and that appellant "was rubbing his hands everywhere." She also gave an interview in which she denied that appellant had put anything in her vagina. On October 17, 2022, in a second interview, S.C. told Investigator Miranda Pitts that appellant "was touching" her, and answered affirmatively when Pitts asked whether appellant "penetrate[d]" her. Following the second interview, appellant was charged with object sexual penetration by force, in violation of Code § 18.2-67.2.

At the beginning of voir dire, the trial court informed the venire about the nature of the charge and asked the prospective jurors whether they had any personal interest in the trial, had obtained any information about the alleged offenses, had expressed any opinion about appellant's guilt or innocence, or were aware of any biases or prejudices. The prospective jurors replied in the negative. They were also asked whether they understood that appellant was presumed innocent and did not have to produce any evidence and that the Commonwealth had to prove his guilt beyond a reasonable doubt. They replied affirmatively. None of the prospective jurors knew of any reason why they could not be fair and impartial to both parties.

The Commonwealth's attorney asked the venire if they, or someone they were close to, had been a victim of a sexual offense. Prospective Juror 23 indicated that he had, when he was a

child. He could not recall the details and only remembered being interviewed by detectives. When asked if he could be fair and impartial given his experiences, he stated, "I don't know." When asked if he held a moral, philosophical, or religious view that prevented him from passing judgment, he indicated, "I don't know." He stated, however, that he believed he could listen to the evidence, follow the instructions of law, and be impartial to both parties.

Counsel for appellant also examined the venire, who again indicated that they could follow the court's instructions, understood that the Commonwealth had the burden to prove all elements of the charge beyond a reasonable doubt, and that appellant was presumed innocent. Appellant moved to strike prospective Juror 23 for cause, arguing that Juror 23 had been "uncertain, based upon how the facts play out, whether or not he can be fair and impartial." In response to appellant's motion, the court allowed appellant to question Juror 23 further.

Upon further questioning by counsel for appellant, Juror 23 stated that he had "some feelings toward" sexual offense cases. When asked whether those feelings created a bias that would affect his ability to be fair, Juror 23 stated, "I would like to say no. I don't—I'm not sure." He noted that he did not "feel comfortable hearing things like that" with respect to sexual offenses. Asked if he could separate his experience from those of a witness, Juror 23 indicated, "I would like to say that I could separate them." Finally, counsel for appellant asked Juror 23 if evidence that "touched upon something that causes [him] emotional turmoil" would cause him to develop a bias or prejudicial view to one of the parties. Juror 23 indicated that he "would believe so." The Commonwealth's attorney then asked if Juror 23 could look at the evidence and "be impartial, putting aside everything that's ever happened to you that may have traumatized you in the past and just focus on what is presented here today . . . hearing and applying the instructions of law." Juror 23 responded "yes."

Appellant renewed his motion to strike Juror 23 for cause. The trial court denied the motion, finding that Juror 23 had unequivocally stated that he could be fair and impartial in his application of the law.

At trial, S.C. recounted the incident. She acknowledged that she did not immediately report the incident, explaining that she did not want appellant's children to be taken away. S.C. ultimately reported because she did not want appellant's children to "go through anything like that with [appellant]" and she "didn't want [appellant] to just be let free doing this."

B.C. testified that she and S.C. moved a mattress into the living room and went to sleep around midnight. B.C. awoke around 2:30 a.m. because appellant fell on her. B.C. then went to V.T.'s room. S.C. eventually came to V.T.'s room crying and told B.C. that something had happened.

Thompson testified that in the early morning of July 24, 2022, she received a text message from S.C. requesting to be picked up. Thompson arranged to pick up S.C. later that morning. About a week later, S.C. told Thompson that appellant "put his hands down into her underwear and into her." Initially, S.C. did not wish to report to police because she was worried about Amanda's children. Thompson denied pressuring S.C. to report the incident.

Pitts recounted that during her second interview, S.C. first stated that appellant was "touching" her. When Pitts specifically asked if appellant "penetrated" her, S.C. responded affirmatively. Pitts explained that victims do not usually use the word "penetration" when describing sexual assault because it is "not always seen as . . . a big factor to a victim."

Appellant moved to strike the evidence. The trial court denied the motion.

Amanda testified in appellant's defense. On July 24, 2022, she was asleep in her bed when B.C. woke her and asked, "can you get [appellant], he's being annoying." Amanda told B.C. to direct appellant to come upstairs, but did not retrieve appellant because she was trying to

get her youngest child to sleep. According to Amanda, the next morning, S.C. acted "perfectly normal." After breakfast, Amanda, appellant's mother, and all the children went shopping in Orange. While shopping, S.C. never discussed Tipton.

Appellant renewed his motion to strike, arguing that S.C. was not a credible witness. The trial court denied the motion. The jury convicted appellant as charged. This appeal followed.

## II. ANALYSIS

### A. Juror 23

Appellant asserts that the trial court erred in refusing to strike Juror 23 for cause, arguing that Juror 23 was equivocal about his ability to be impartial and that his answer to the Commonwealth's attorney's rehabilitative question failed to reconcile with his prior doubts about his own impartiality.

"Juror impartiality is a question of fact, and a trial court's decision to seat a juror is entitled to great deference on appeal." *Taylor v. Commonwealth*, 61 Va. App. 13, 23 (2012) (quoting *Lovos-Rivas v. Commonwealth*, 58 Va. App. 55, 61 (2011)). Because the trial court can see and hear each juror's response to questions posed during voir dire, it "is in a superior position to determine whether a prospective juror's responses . . . indicate that the juror would be prevented from or impaired in performing the duties of a juror as required by the court's instructions and the juror's oath." *Id.* (quoting *Lovos-Rivas*, 58 Va. App. at 61). Therefore, "a trial court's refusal to strike a juror for cause will not be disturbed on appeal unless that decision constitutes 'manifest error amounting to an abuse of discretion.'" *Goodwin v. Commonwealth*, 71 Va. App. 125, 136 (2019) (quoting *Lovos-Rivas*, 58 Va. App. at 61).

"The right to be tried by an impartial jury is guaranteed under both the United States and Virginia Constitutions." *Taylor*, 61 Va. App. at 22; *see* Code § 8.01-358. "For that guarantee to be effective, persons accused of violating criminal laws must be provided with 'an impartial jury drawn

from a panel . . . free from exceptions.'" *Id.* (quoting *Breeden v. Commonwealth*, 217 Va. 297, 300 (1976)). "Every prospective juror must stand indifferent to the cause, 'and any reasonable doubt as to a juror's qualifications must be resolved in favor of the accused.'" *Id.* at 23 (quoting *Breeden*, 217 Va. at 298). "If there be a reasonable doubt whether the juror possesses these qualifications, that doubt is sufficient to insure his exclusion." *Id.* (quoting *Breeden*, 217 Va. at 298). In assessing a juror's impartiality, we review "the *voir dire* of each juror as a whole, not just isolated statements by that juror." *Goodwin*, 71 Va. App. at 136. "The opinion entertained by a juror, which disqualifies him, is an opinion of that fixed character which repels the presumption of innocence in a criminal case, and in whose mind the accused stands condemned already." *Id.* at 141 (quoting *Justus v. Commonwealth*, 220 Va. 971, 976 (1980)).

Here, Juror 23 held no such fixed opinion with regard to appellant's guilt. Rather, he affirmed that he understood appellant was presumed innocent and that the Commonwealth had to prove his guilt beyond a reasonable doubt. Juror 23 expressed that hearing the facts of a sexual assault case would be uncomfortable for him and that he had "some feelings" about sex offenses. But he affirmed he could "be impartial, putting aside everything that's ever happened to [him] that may have traumatized [him] in the past and just focus on what is presented" as well as "hear[] and apply[] the instructions of law." The record thus supports the trial court's determination that Juror 23 could serve as an impartial juror, and we will not second guess that decision on appeal. *Townsend v. Commonwealth*, 270 Va. 325, 329 (2005).

## B. Sufficiency of the Evidence

Appellant argues that the trial court erred in denying his motion to strike because S.C. was inherently incredible. Specifically, he asserts that S.C. did not give "clear testimony of penetration."

"A motion to strike challenges whether the evidence is sufficient to submit the case to the jury." *Linnon v. Commonwealth*, 287 Va. 92, 98 (2014) (quoting *Lawlor v. Commonwealth*, 285 Va. 187, 223 (2013)). "In the context of a jury trial, a trial court does 'not err in denying [a] motion to strike the evidence [when] the Commonwealth present[s] a prima facie case for consideration by the fact finder.'" *Vay v. Commonwealth*, 67 Va. App. 236, 249 (2017) (alterations in original) (quoting *Hawkins v. Commonwealth*, 64 Va. App. 650, 657 (2015)). Whether the evidence is sufficient to prove each element of a crime "is a factual finding, which will not be set aside on appeal unless it is plainly wrong." *Id.* (quoting *Linnon*, 287 Va. at 98).

S.C. testified that she woke around 2:30 a.m. to find that appellant had his hand in her underwear and his fingers in her vagina. She reported the incident to B.C., her family members, and finally the police. This testimony alone is sufficient to present a prima facie case of object sexual penetration by force. *See Poole v. Commonwealth*, 73 Va. App. 357, 368 (2021) (noting that convictions for "sexual offenses may be sustained solely upon the uncorroborated testimony of the victim" (quoting *Wilson v. Commonwealth*, 46 Va. App. 73, 87 (2005))). But S.C.'s testimony was also corroborated by that of B.C. and Thompson.

Further, appellant's argument that S.C. was inherently incredible is unavailing. "A legal determination that a witness is inherently incredible is very different from the mere identification of inconsistencies in a witness' testimony or statements." *Kelley v. Commonwealth*, 69 Va. App. 617, 626 (2019). "Testimony may be contradictory or contain inconsistencies without rising to the level of being inherently incredible as a matter of law." *Id.* "To be 'incredible,' testimony 'must be either so manifestly false that reasonable men ought not to believe it, or it must be shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" *Id.* (quoting *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006)). The mere fact that a witness "delayed in reporting knowledge of a case" or gave "inconsistent statements

during the investigation of a crime does not necessarily render the testimony unworthy of belief." *Juniper*, 271 Va. at 415. Rather, "[t]his circumstance is appropriately weighed as part of the entire issue of witness credibility, which is left to the jury to determine." *Id.*

S.C.'s testimony was not inherently incredible as a matter of law. She testified that she woke up and found appellant with his fingers in her vagina. The next day, she told appellant he had "ruined [her] life because she had "woke up with [his] hands in [her] pants," a statement from which the jury could reasonably infer that penetration occurred. About a week later, S.C. told Thompson that appellant "put his hands down into her underwear and into her." And S.C's written statement that appellant was "touching" her and "rubbing his hands everywhere" is not inconsistent with penetration. Pitts also confirmed that sexual assault victims do not generally use the word "penetration" to describe that very act. To that end, Pitts specifically asked S.C. whether penetration occurred, and S.C. confirmed that it had. S.C.'s general credibility, the resolution of any inconsistences in her testimony, and how to weigh all the evidence were questions for the jury to resolve; the fact that it did not resolve them in appellant's favor does not necessarily make S.C. inherently incredible. *Juniper*, 271 Va. at 415. Thus, the trial court did not err when it denied appellant's motion to strike.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

*Affirmed.*