COURT OF APPEALS OF VIRGINIA

Present:   Judges Athey, Causey and Chaney
Argued at Williamsburg, Virginia

**UNPUBLISHED**

L. C. GRANT, III

v.        Record No. 0630-24-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
CLIFFORD L. ATHEY, JR.
AUGUST 26, 2025

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Robert B. Rigney, Judge

J. Barry McCracken, Assistant Public Defender, for appellant.

Liam A. Curry, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


On November 30, 2023, a jury empaneled in the Circuit Court of the City of Norfolk

("trial court") found L.C. Grant, III ("Grant") guilty of second-degree murder, carjacking, and

stabbing while committing a felony.[1]  By final order entered on March 24, 2024, the trial court

sentenced Grant to be incarcerated for a total of 40 years.  On appeal, Grant assigns error to the trial

court for refusing to strike Juror 19 for cause.  In support of his assignment of error, Grant notes that

during voir dire Juror 19 "maintained that [Grant] was obligated to prove his innocence" and

initially stated that she "would at least want to hear his side."  Grant also concedes that later during

voir dire Juror 19 agreed to follow the judge's instructions and "d[idn't] have to [hear Grant's side]"

to be fair and impartial to both sides.  Based upon the totality of the juror's voir dire responses, we

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Grant also separately pleaded guilty to a second count of second-degree murder.  That
conviction is not before us on appeal.

find that her responses did not reflect that she possessed a fixed opinion or bias against Grant. Thus, we affirm.

## I. BACKGROUND[2]

The trial court impaneled 40 potential jurors before commencing voir dire of the venire designated to serve during Grant's jury trial. During voir dire, the trial court advised the entire panel that "[o]ur system of justice presumes the defendant is innocent until proven guilty." The trial court then asked the entire panel, "Are any of you unable to keep this presumption alive in your mind throughout the entire case until the 12 of you enter the jury room to begin deliberations?" No member of the panel, including Juror 19, raised their hand in response to the trial court's question. The trial court then advised the entire panel that neither the United States Constitution nor the Constitution of Virginia required Grant to produce any evidence or to testify at the trial because he was presumed to be innocent. The trial court then asked the entire panel, "Will any of you think different about the defendant if he chooses not to put evidence on?" In response to this question, only Juror 15 raised their hand, indicating that the juror would think differently of Grant's case if he did not proffer any evidence in his defense.

Later, during the portion of voir dire when Grant's defense counsel was permitted to ask additional questions of the panel, he asked if anyone on the panel felt that they "would need to hear from [Grant] to fairly decide the case" and further if anyone "believe[d] [Grant] must prove that he's innocent." Juror 19 raised her hand in response. The trial court then questioned Juror 19

---

[2] As Grant's appeal only challenges the impartiality of Juror 19, we restate only those facts pertinent to evaluating the merits of his assertion. Hence, we recite the necessary facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Konadu v. Commonwealth*, 79 Va. App. 606, 610 n.1 (2024) (quoting *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)). "Doing so requires that we 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Id.* (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).

individually, out of the presence of the other members of the panel. During the individual

examination, the trial court and Juror 19 had the following exchange:

> THE COURT: Do you believe the defendant has to testify even though the Constitution says that the defendant doesn't have to testify or produce any evidence?
>
> PROSPECTIVE JUROR NO. 19: So I would at least want to hear his side, like.
>
> THE COURT: Even if I instructed you that the Constitution does not permit -- does not require anybody, you still want to hear someone's side?
>
> PROSPECTIVE JUROR NO. 19: Nah, I don't have to.
>
> THE COURT: The Constitution says you have a right not to testify, and I gave you a little bit about that. I'll give you that instruction. Knowing that part of the Constitution and knowing that, do you think you could be fair and honest?
>
> PROSPECTIVE JUROR NO. 19: Yes.
>
> THE COURT: Fair and impartial to both sides in this case?
>
> PROSPECTIVE JUROR NO. 19: Yes.

Following this exchange, Grant moved to strike Juror 19 for cause. Grant argued that "[i]t

took her a lot of cajoling to get her to come around to the position that she doesn't need to hear the

defendant testify, Judge." In response, the Commonwealth contended that by Juror 19 agreeing that

Grant was not required to testify and that she would not need to hear his testimony to evaluate his

guilt under the Constitution, any concerns regarding her ability to serve fairly and impartially were

"cured" for purposes of serving on the jury. The trial court then deferred ruling on the motion.

After the completion of voir dire questioning, the trial court returned to the motion to strike

Juror 19 for cause. Grant reargued that Juror 19 "wouldn't budge from wanting to hear the

defendant testify." Counsel for Grant also insisted that "she kind of kept saying" that she would

want to hear him testify. In response, the Commonwealth contended, in part, that the trial court had

"rehabilitated her." Grant retorted that "[i]t took six tries though." The trial court found that after it had individually questioned Juror 19, she, "at the end," had been "rehabilitated." For that reason, the trial court denied Grant's motion to strike Juror 19 for cause.

Juror 19 was not peremptorily struck and served as a member of the petit jury. The petit jury later returned verdicts finding Grant guilty of second-degree murder, carjacking, and stabbing while committing a felony. The trial court convicted Grant of the offenses and sentenced him to 40 years in prison. Grant appealed.

## II. ANALYSIS

### A. *Standard of Review*

"The striking of any individual potential juror for cause . . . is committed to the sound discretion of the trial court." *Townsend v. Commonwealth*, 270 Va. 325, 329 (2005). Juror impartiality is a question of fact, *see Wainwright v. Witt*, 469 U.S. 412, 428 (1985), and a trial court's decision to seat a juror is entitled to great deference on appeal "because the trial court 'sees and hears the juror,'" *Blevins v. Commonwealth*, 267 Va. 291, 297 (2004) (quoting *Eaton v. Commonwealth*, 240 Va. 236, 246 (1990)). To determine whether the trial court should have excluded a prospective juror, this Court must consider the "entire voir dire, not just isolated portions." *Juniper v. Commonwealth*, 271 Va. 362, 401 (2006). Because the trial court is "able to see and hear each member of the venire respond to questions posed" during voir dire, it "is in a superior position to determine whether a prospective juror's responses during voir dire indicate that the juror would be prevented from or impaired in performing the duties of a juror as required by the court's instructions and the juror's oath." *Townsend*, 270 Va. at 329 (quoting *Green v. Commonwealth*, 262 Va. 105, 115 (2001)).

"As an appellate court, we must defer to a trial court's ruling on the issue of whether to retain or excuse a prospective juror for cause and that ruling will not be disturbed on appeal

- 4 -

unless there has been manifest error amounting to an abuse of discretion." *Barrett v. Commonwealth*, 262 Va. 823, 826 (2001). "An abuse of discretion occurs only when 'reasonable jurists' could not disagree as to the proper decision." *Thomas v. Commonwealth*, 62 Va. App. 104, 111 (2013) (quoting *Brandau v. Brandau*, 52 Va. App. 632, 641 (2008)). "This principle necessarily implies that, for some decisions, conscientious jurists could reach different conclusions based on exactly the same facts—yet still remain entirely reasonable." *Id.* (quoting *Hamad v. Hamad*, 61 Va. App. 593, 607 (2013)).

B. *The trial court did not abuse its discretion in denying Grant's motion to strike Juror 19 for cause.*

In his sole assignment of error, Grant alleges that the trial court erred by denying his motion to strike Juror 19 for cause. He alleges that, during voir dire, Juror 19 "maintained that [he] was obligated to prove his innocence" and thus was legally misinformed in such a manner that necessitated her dismissal for cause. In support, Grant contends on appeal that, "'[c]onsider[ing] the juror's entire voir dire,' Juror 19's responses created reasonable doubt about her qualifications to serve on a jury." We disagree.

"It is the duty of the trial court, through the legal machinery provided for that purpose, to procure an impartial jury to try every case." *Salina v. Commonwealth*, 217 Va. 92, 93 (1976). Therefore, "[t]he court and counsel for either party shall have the right to examine under oath any person who is called as a juror therein." Code § 8.01-358. After questioning, if it appears to the trial court "that the juror does not stand indifferent in the cause, another shall be drawn or called and placed in his stead for the trial of that case." *Id.*

But "[i]t is not uncommon to discover during *voir dire* that prospective jurors have preconceived notions, opinions, or misconceptions about the criminal justice system, criminal trials and procedure, or about the particular case." *Cressell v. Commonwealth*, 32 Va. App. 744, 761 (2000). "[I]n deciding whether a venireman who has formed an opinion is constitutionally

- 5 -

impartial, courts must 'determine . . . the nature and strength of the opinion formed.' The spectrum of opinion can range, by infinite shades and degrees, from a casual impression to a fixed and abiding conviction." *Briley v. Commonwealth*, 222 Va. 180, 185 (1981) (second alteration in original). "[T]he trial court must weigh the meaning of the answers given in light of the phrasing of the questions posed, the inflections, tone, and tenor of the dialogue, and the general demeanor of the prospective juror." *Taylor v. Commonwealth*, 67 Va. App. 448, 455 (2017) (alteration in original) (quoting *Smith v. Commonwealth*, 219 Va. 455, 464-65 (1978)). "The opinion entertained by a juror, which disqualifies him, is an opinion of that *fixed character* which repels the presumption of innocence in a criminal case, and in whose mind the accused stands condemned already." *Justus v. Commonwealth*, 220 Va. 971, 976 (1980) (emphasis added) (quoting *Slade v. Commonwealth*, 155 Va. 1099, 1106 (1931)). But a juror's "'casual impression' . . . does not necessarily disqualify a prospective juror." *Huguely v. Commonwealth*, 63 Va. App. 92, 123 (2014) (quoting *Briley*, 222 Va. at 185).

If a prospective juror "does not stand indifferent to the cause, he is not competent. If he has any interest in the cause, or is related to either party, or has expressed or formed any opinion, or is sensible of any bias or prejudice, he is excluded by the law." *Lovos-Rivas v. Commonwealth*, 58 Va. App. 55, 60-61 (2011) (quoting *Spangler v. Ashwell*, 116 Va. 992, 996-97 (1914)). For-cause exclusion is also required for "[a] juror who holds a preconceived view that is inconsistent with an ability to give an accused a fair and impartial trial, or who persists in a misapprehension of law that will render him incapable of abiding the court's instructions and applying the law." *Sizemore v. Commonwealth*, 11 Va. App. 208, 211 (1990). But "no *per se* exclusion is required when a juror *expresses an expectation that a defendant will testify* or *when a prospective juror is unschooled in the law*." *Id.* at 212 (emphases added) (internal citation omitted).

Where ensuring a juror's impartiality is concerned, it is generally disfavored for a judge to rehabilitate a prospective juror. *See McGill v. Commonwealth*, 10 Va. App. 237, 242 (1990) ("A trial judge who actively seeks to rehabilitate a prospective juror may unconsciously become an advocate for the juror's impartiality."). But for "rehabilitation" to occur, the trial court must make an initial finding that the juror has a biased opinion to rehabilitate. *See Harvey v. Commonwealth*, 76 Va. App. 436, 456-57 (2023). Otherwise, if no such opinion exists the judge's questioning of a juror constitutes an "appropriate clarification." *Id.* at 457. To make that determination the judge may give basic instructions and ask general clarifying questions as "necessary to determine the presence of bias" in the first instance. *Id.* at 456 (quoting *McGill*, 10 Va. App. at 243). "Such questioning does not constitute rehabilitation." *Id.* "If a trial judge adheres to this role, an appellate court may not set aside the trial judge's determination of a juror's impartiality if the juror's responses, even though conflicting, support that determination." *Id.* (quoting *McGill*, 10 Va. App. at 243).

Here, we find under the applicable standard of review that the trial court investigated Juror 19's impressions about the applicable law and explored her perception that she would like Grant to testify in determining whether she *needed* to be rehabilitated or if she only needed the law clarified for her. *See Groves v. Commonwealth*, 50 Va. App. 57, 62 (2007) ("In reviewing the record, therefore, we will not 'fix upon isolated statements of the trial judge taken out of the full context in which they were made, and use them as a predicate for holding the law has been misapplied.'" (quoting *Bullock v. Commonwealth*, 48 Va. App. 359, 368 (2006))). The trial court began by questioning Juror 19 with respect to her understanding of the Constitution. Then, after being instructed on how the Constitution applied to a criminal case, Juror 19 indicated that she properly understood and recanted her previous position regarding Grant's need to testify on his own behalf. The trial court declined to find her initial statements sufficient to trigger the need for rehabilitation

and simply clarified for her the rights of the defendant to refrain from either testifying or offering any evidence in his defense. And we can find no clear evidence to the contrary. *See Bottoms v. Bottoms*, 249 Va. 410, 414 (1995) ("Absent clear evidence to the contrary in the record, the judgment of a circuit court comes to an appellate court with a presumption that the law was correctly applied to the facts."). As such, we "may not set aside the trial judge's determination" that Juror 19 was impartial. *Harvey*, 76 Va. App. at 456.

We further find that the transcript of the entire voir dire examination of Juror 19 does not establish that she held firm to a biased opinion of such a "fixed character [that it repelled] the presumption of innocence . . . and in whose mind the accused [stood] condemned already." *Justus*, 220 Va. at 976. Contrary to Grant's allegations, the transcript does not show that, throughout her entire voir dire examination, she "maintained that [he] was obligated to prove his innocence." The entire transcript reveals that Juror 19, along with other venire members, initially indicated—by her refraining from raising her hand—that she would be able to keep the presumption of innocence alive in her mind throughout the entire case until jury deliberations began. Similarly, she indicated that she would continue to think about the presumption of Grant's innocence even if he chose not to put on any evidence. Only later, in response to questions asked by defense counsel, did Juror 19 express the desire to hear Grant's "side" of the story. At core, that response could best be characterized as a mere "expectation that a defendant will testify" in light of the juror's lack of legal education. *Sizemore*, 11 Va. App. at 212. It is not a "fixed statement" that would support a finding of bias per se and contextually is more indicative of potential confusion by the juror regarding the law in question as opposed to being an opinion that Grant was guilty. Thus, Juror 19's statements in response to the judge or counsel do not rise to the level of a "fixed opinion" that would entitle Grant to a new trial. *See, e.g.*, *Scott v. Commonwealth*, 58 Va. App. 265, 272 (2011) (reversing a trial court determination of juror impartiality where from the content of a juror's

voir dire it was evident that the juror in question held an opinion of a fixed character that repelled the presumption of the defendant's innocence where the juror "acknowledged that he had a preconceived notion that 'if you go to court . . . you're pretty much guilty'"). Thus, we find that a reasonable jurist could have concluded that Juror 19's answers were merely a preconceived misconception, which she subsequently laid aside when the trial court informed her that the federal and state Constitutions did not require Grant to testify.[3] As a consequence, the trial court did not commit an error amounting to an abuse of discretion when it refused to strike Juror 19 for cause.

III. CONCLUSION

In conclusion, we find no error in the trial court's denial of Grant's motion to strike Juror 19 for cause. Therefore, we affirm his convictions.

*Affirmed.*

---

[3] On brief, Grant also argues that the trial court's "terse statement" about his constitutional right to not testify and to not produce any evidence "failed to address the essential issue that neither [his] failure to produce evidence" nor his exercise of the "constitutional right to remain silent" was a circumstance that Juror 19 was to consider in deciding whether the Commonwealth had proven his guilt. He also argues that none of the trial court questions to Juror 19 specifically addressed whether she could lay aside her preconceived misconceptions. He thus contends that none of the juror's affirmative responses to the court's follow-up questions were sufficient to dispel the expectation that he would prove his innocence and to establish her qualifications to serve as a juror.

However, we cannot address these arguments, because Grant did not preserve them under Rule 5A:18. Contrary to his assertions, during voir dire, Grant only made factually incorrect arguments. First, he argued that Juror 19 "wouldn't budge from wanting to hear the defendant testify." Then, Grant insisted that "she kind of kept saying" that she would want to hear him testify. Lastly, when the Commonwealth argued that the trial court had "rehabilitated her," Grant replied by stating that "[i]t took six tries though." Given Rule 5A:18, we "will not consider an argument on appeal [that] was not presented to the trial court." *Ohree v. Commonwealth*, 26 Va. App. 299, 308 (1998). In addition, we "will not consider an argument that differs from the specific argument presented to the trial court, even if it relates to the same general issue." *Edwards v. Commonwealth*, 41 Va. App. 752, 761 (2003) (en banc). Thus, as these appellate arguments differ from what Grant argued below, and he does not assert that the ends-of-justice exception permits this Court's review, we decline to entertain these arguments.